6   397
6   411
7   67
7   68
7   253

6   397
17   161

6   397
21   349

## BUTTE CITY SMOKE-HOUSE LODE CASES.

Murray v. Buol and others. Same v. Owsley and others. Same v. McNamara and others. Same v. Louis and others. Same v. Talent and others. Same v. Reins and others. Same v. Richardson and others. Same v. Thornton and others. Same v. Beal and others. Same. v. Jacobs and others. Same v. Nessler. Same v. Simon Hauswirth and others. Same v. K. Hauswirth, Ex'r, and others. Same v. Steele and others. Same v. P. J. Hamilton and others. Same v. Sands and others. Same v. J. L. Hamilton. Same v. Hauser and others. Same v. Barnard. Same v. Morris and others. Same v. Davis. Same v. J. L. Hamilton and others. Same v. First Nat. Bank of Butte. Same v. Cohen and others. Same v. Dovenspeck and others. Same v. Dellinger and others. Same v. Bowes. Same v. Roach. Same v. Schnied and others. Same v. Ornstein, Adm'x, etc. Same v. Foster. Same v. Lavalle and others. Stevens G. S. & M. Co. v. Mills.

Mining Claim — *Patent* — *Reservation of rights claimed under Butte town site patent declared void.*— No title was acquired under the United States patent to the town site of Butte, issued September 26, 1877, to any portion of the Smoke-house quartz-lode mining claim, located in 1875, and to which patent was issued on March 15, 1881; and the exception to the last-mentioned patent, excepting and excluding therefrom all town property rights upon the surface, and all houses, buildings, structures, lots, blocks, streets, alleys, and other municipal improvements on the surface of the said mining claim not belonging to the grantees therein, and all rights necessary or proper to the occupation, possession and enjoyment of the same, did not impair the title of the grantees, acquired by their location, and compliance with the laws, to the absolute ownership of the lands embraced within the boundaries of their claim; and the defendants, claiming under the town site patent, have lost their rights, if any they had, over said claim, by failure to file their adverse claim before the said patent issued.

Same — *Not affected by town site patent, which can confer no title in mining claim.* — An exception in a town site patent, excluding from its operation all mines, mining claims, and possessions held under existing

laws, is an exception required by the law, and is made by the law itself, and is conclusive upon the question that the government did not, and did not intend by such town site patent to, convey any valid mine, mining claim, or possession held under existing laws; and it is therefore impossible, under a patent to a town site, to acquire any interest in any valid mine or mining claim, or in the surface thereof.

SAME — *Town site patent — No defense to ejectment under mining patent.* — Claimants claiming title, under a town site patent, to the surface ground of a mining claim over which the town site is extended, are not relieved by such town site patent from setting up their adverse claims on notice of application for a patent to the mining claim, and their failure to assert their claims before such patent is issued bars them from doing so thereafter.

SAME — *Owner of mining claim not affected by town site patent.* — The owner of a valid mining claim over which a town site is extended by United States patent is not required to file an adverse claim to such patent, as his claim is expressly excepted by law, and the usual exception inserted in such town site patent from its operation.

SAME — *Mining claim location — Intends a grant — Rights under, not restricted by terms of patent.* — A valid location of a quartz-lode mining claim on the public mineral lands of the United States is a grant from the government to the locator thereof, and carries with it the right, by a compliance with the law, of obtaining a full and complete title to all the lands included within the boundaries of the claim, which by the location are withdrawn from sale or pre-emption; and the patent, when issued, relates back to the location, and is not a distinct grant, but the consummation of the grant, which had its inception in the location of the claim; and, therefore, the land officers have no right to insert in the patent any exceptions or reservations diminishing or curtailing the rights acquired by the location.

SAME — *Patent to mining claim — Reservation in, void.* — There is no law authorizing the United States land office to exclude from a mining claim patent the right to surface ground; and a reservation in such a patent, excluding therefrom the right to all lots, blocks, streets, alleys, houses, and municipal improvements on the surface of the claim, is necessarily void.

SAME — *Conclusive at law as to title.* — The issuance of a patent to a quartz-lode mining claim is conclusive, as to the title to the land within its limits, upon the court in an action at law.

*Appeal from Second District, Deer Lodge County.*

THIRTY-THREE ACTIONS in ejectment. Judgments for plaintiff Murray. Defendants appeal.

These actions, called the " Smoke-house Lode Cases," are

on all-fours with the *Silver Bow M. & M. Co.* v. *Clark*, 5 Mont. 378, and *Talbot* v. *King*, 6 Mont. 76. The facts being otherwise sufficiently stated in the opinion, it is only necessary to add that the Smoke-house mining claim, under which the plaintiff claims, was located in 1875, and it is not disputed that all acts requisite to maintain title were performed in respect thereof up to the issuance of the patent in 1881. Application for the Butte town site patent was made in June, 1876, and the final entry for such town site was made in July, 1876, and the patent issued in September, 1877. The exception referred to in the opinion as being contained in the Smoke-house patent was as follows: "Excepting and excluding, however, from these presents, all town property rights upon the surface; and there are hereby expressly excepted and excluded from the same all houses, buildings, structures, lots, blocks, streets, alleys, and other municipal improvements on the surface of the above-described premises not belonging to the grantees herein, and all rights necessary or proper to the occupation, possession and enjoyment of the same." The Butte town site patent, which was prior in date, contained the following: "No title shall be hereby acquired to any mine of gold, silver, cinnabar or copper, or to any valid mining claim or possession, held under existing laws of congress." Judgment was given in each case for plaintiff, from which defendants appeal.

KNOWLES & FORBIS, for the appellants.

W. W. DIXON, for the respondent.

WADE, C. J. The foregoing cases are actions in the nature of ejectment, the plaintiff and respondent claiming title and the right of possession under the Smoke-house quartz-lode mining claim, issued March 15, 1881, and the defendants and appellants in each case claiming title and right of possession under the patent of the Butte town site, issued on the 26th day of September, 1877. These causes arise under the same patents, and in every material respect are

similar to each other, and to the case of *Talbot* v. *King et al.*
6 Mont. 76 (decided by this court at the January term, 1886),
and are parallel to the case of *Silver Bow M. & M. Co.* v.
*Clark*, 5 Mont. 378 (decided by this court at the January
term, 1885); but as the court, under the act of congress of
July 10, 1886, has been reorganized since these decisions
were rendered, by increasing the number of justices, and
by the appointment of two justices who did not take part
in those decisions, we have considered the questions involved
herein as still open, and as if presented here for the first
time.

The theory of the decisions in the case of *Talbot* v. *King*
and in the case of *Silver Bow M. & M. Co.* v. *Clark* is that
a valid location of a quartz-mining claim on the public min-
eral lands of the United States is a grant from the govern-
ment to the locator thereof, and carries with it the right,
by a compliance with the law, of obtaining a full and com-
plete title; that, after such a location, the lands included
within its boundaries are withdrawn from sale or pre-emp-
tion; that the patent relates back to the location, and is the
consummation of the grant, which by the location had its
inception; that a valid location, kept alive by representa-
tion and a compliance with law, gives to the locator, or his
grantees, the right to the exclusive possession and enjoy-
ment of the surface of the claim located; that the office of
an adverse claim is to have determined, by a court of com-
petent jurisdiction, the right to such possession; that, if an
adverse claim is not made at the time and in the manner
prescribed by law, the same is thereafter barred; that the
issuance of a patent to a quartz-lode mining claim is con-
clusive upon the court in an action at law; that the discov-
ery, location, marking and bounding, and all proceedings
up to the issuance of the patent, were regular and as re-
quired by law; that it is impossible, under a patent to a
town site, to acquire any interest in any mine of gold, silver,
cinnabar or copper, or in any valid mining claim or posses-
sion, held under existing laws; that, as to any such mine or

mining claim or possession, a patent to a town site did not take hold of, operate upon, or in any manner affect it; that an exception in a mining-claim patent, excluding therefrom all lots, blocks, streets, alleys, houses, and municipal improvements on the surface of the claim, is unauthorized and void; that an exception in a town site patent, excluding from its operation all mines, mining claims, and possessions held under existing laws, is an exception required by the law, and is made by the law itself, and is conclusive upon the question that the government did not, and did not intend by such town site patent to, convey any valid mine, mining claim, or possession held under existing laws.

We believe that the theory upon which the cases of *Talbot* v. *King* and *Silver Bow M. & M. Co.* v. *Clark* were decided is correct, and the decisions in those cases are hereby approved and affirmed.

The theory of appellants seems to be that the town site patent conveys all the grounds included within the boundaries of the town site, regardless of prior conveyances to other parties; that, in the issuance of such a patent, the officers of the government decided that the grounds within the boundaries of the town site were not valuable for mineral purposes; that the words in the patent excluding from its operation all mines, mining claims, and possessions held under existing laws, was not an exception that excluded any lands from the Butte town site; that the issuance of the Smoke-house patent did not decide that the premises embraced therein was a valid mining claim and possession at the date of the issuance of the town site patent; that, if the failure to contest the application for the Smoke-house patent waived all rights to such mining claim, then the failure of the Smoke-house claimants to contest the town site application was a waiver of any rights to the grounds embraced in the town site patent; that the grant derived from the location of a mining claim is an independent grant from that derived from a patent to the same ground, and that the location of a mining claim is not the

first step towards the obtaining of a patent for such claim; that the patent issued for the Smoke-house mining claim was an adjudication by the land department that all lots, blocks, streets, alleys, etc., should be excepted from such patent; that the grantees accepted the patent to the Smoke-house mining claim with those exceptions in the same, and are bound thereby; that the applicants were not barred from proving their alleged estoppel; and that, as both these parties claim by patents, the court should have gone back of the patents, and determined from the proof who had the better right.

We do not think the acts of congress in relation to acquiring title to mining claims and town sites warrant or uphold this theory of appellants. Why should the court have gone behind the patents, and ascertained from the proofs which of these parties had the better right, when it was not possible for either to have acquired any right or title to the property of the other by virtue of his patent? Their patents do not cover or touch the same property. By the express terms of the law, and by the express terms of the town site patent, all valid mines, mining claims, and possessions held under existing laws, were excluded from the operation of that patent. At the time of the issuance of the town site patent in 1877, the Smoke-house location had, for more than two years, been a valid mining claim and possession. This is evidenced by the subsequent issuance of a patent for such mining claim in pursuance of a location in 1875. There are no authorities that dispute the doctrine that the patent relates back to the location and protects it. The location is the inception of the grant, of which the patent is the consummation. The government does not go through the performance of making two grants of one mining claim to the same person, or to his successors in interest.

The Smoke-house location, being a valid mining claim at the time, was expressly excepted from the operation of the town site patent, and it was not possible by such a patent

to have obtained any interest therein or title thereto. There is no conflict between a town site patent and a mining claim patent, and can be none. They evidence separate and distinct grants, and cannot conflict with one another. The one conveys a mining claim, an independent grant, and the other conveys ground for a town site, from which, by the law, all valid mining claims and possessions are excluded. Many valuable mines, mining claims and possessions are held and owned by perfect titles, over which town sites have been extended, and there can be no conflict between them. The two titles take hold of and affect property that is entirely separate and distinct.

The officers of the land department had no authority to convey a mining claim by the issuance of a town site patent, and no authority to convey a town site by the issuance of a mining claim patent. At the time of issuing the town site patent, they had no authority to declare that the Smoke-house location was not a valid mining claim and possession; and, having no such authority, they excluded from the operation of the town site patent all mines, mining claims and possessions, as the law required.

But it is said that the patent issued for the Smoke-house claim was an adjudication by the land department that all lots, blocks, streets and alleys should be excepted from such patent. If this be true, then the land department can make adjudications without authority of law. The Smoke-house location carried with it the right to the exclusive possession and enjoyment of all the surface ground included within the boundaries of the location. This right is given by an act of congress; it is the very essence and substance of the title to quartz-mining claims; and, having a valid location, this title and grant cannot lawfully be taken away or defeated. There is no law authorizing the land officers to exclude from a mining-claim patent the right to such surface ground, and consequently any attempt to do so is necessarily void. The patentee of such a patent is entitled to what the law gives him, and his rights

cannot be abridged or taken from him by the unauthorized or unlawful acts of any one. There is no force in the proposition that the land department adjudicated the surface ground of the Smoke-house patent, or that the grantees of such patent are bound by an unlawful exception. Their rights are defined by the law, and in asserting them they do not encroach upon any rights acquired by the town site patent.

And now, why should the owners of the Smoke-house location have filed an adverse claim to the application for the town site patent? They knew that the town site patent, when issued, would exclude from its operation all valid mines, mining claims, and possessions, and therefore they had no adverse claim. They could not object to the issuance of the town site patent, for it could not interfere with or in any manner affect the Smoke-house location. Suppose they had filed an adverse claim, they would have been informed that they were meddling with what did not concern them.. They would have been told that the town site patent, when issued, could not touch the Smoke-house location.

But it is contended that, if it was not necessary for the Smoke-house owners to make an adverse claim to the town site application, therefore the town site claimants were in like manner relieved from filing their adverse claims to the Smoke-house application for a patent. It is also said that the town site claimants were the owners by patent at the time the Smoke-house application for a patent was made, and, having a patent, they were relieved from making any adverse claim to the Smoke-house application. It is also argued that adverse claims to applications for patents to mining claims can only be made by those who claim some interest in the property as a mining claim, and therefore that those who claim the surface ground of the Smoke-house location, for the purposes of lots, blocks, streets and alleys, were relieved from the necessity of making an adverse claim to the Smoke-house application.

It does not follow that because the Smoke-house owners were not required to make an adverse claim to the town site application for a patent, therefore that the town site owners were relieved from making adverse claim to the Smoke-house application. The town site application was not adverse to the Smoke-house location; but the Smoke-house application for a patent, which was the assertion of a right to the exclusive possession and enjoyment of the surface ground included within the boundaries of the location, called upon every one claiming any interest in such surface ground to set up their adverse claim. And the mere fact that the town site claimants held under a patent from which all valid mining claims and possessions are excluded, did not relieve them from setting up their adverse claim.

Claimants under a town site patent are not relieved from making an adverse claim, if they have one, to an application for a patent to a mining claim within the boundaries of the town site. In such a case both parties would claim the exclusive right to the possession and enjoyment of the ground,— the one by his discovery and location of a mining claim, the other by virtue of his deed from the probate judge. If there had been no discovery, or no location according to law, an adverse claim by the lot-owner would have shown this condition, and defeated the application for a patent; and when this application was made, was the time for the town site claimant to make known his adverse claim; and if, by his laches or neglect, he permitted the statutory time to pass, he thereby lost his right.

The opinion of Mr. Justice Field in the case of *Deffenback* v. *Hawke*, 115 U. S. 392, rendered in the supreme court of the United States at the October term, 1885, is instructive, and covers many of the points and propositions in the cases before us. In that case the plaintiff relied upon a patent of the United States for the land in controversy, issued under the laws for the sale of mineral lands. The defendant set up as ground for equitable relief, against the enforce-

ment of the right of the plaintiff under the patent, that his grantor occupied the land as a lot in the town site of Deadwood, and made improvements thereon, before the plaintiff claimed it as mining ground, or took proceedings to procure a title. The defendant, therefore, denied the right of the plaintiff to acquire the premises as a mining claim on the town site, and he also contended that, if the plaintiff had that right, the patent issued to him should have contained reservations excluding from its operation the buildings and improvements of the defendant, and whatever was necessary for their use and enjoyment.

In deciding the case Justice Field said: "In the present case there is no dispute as to the mineral character of the land claimed by the plaintiff. It is upon the alleged prior occupation of it for trade and business, the same being within the settlement or town site of Deadwood, that the defendant relies as giving him a better right to the property. But, the title to the land being in the United States, its occupation for trade or business did not and could not initiate any right to it, the same being mineral land, nor delay proceedings for the acquisition of the title under the laws providing for the sale of lands of that character. And those proceedings had gone so far as to vest in the plaintiff a right to the title before any steps were taken by the probate judge of the county to enter the town site at the local land office. The complaint alleges, and the answer admits, that on the 20th day of November, 1877, the plaintiff applied to the United States land office at Deadwood to enter the land as a placer mining claim, and that on the 31st day of January, 1878, he did enter it as such, by paying the government price therefor. No adverse claim was ever filed with the register and receiver of the local land office, and the entry was never canceled nor disapproved by the officers of the land department at Washington."

Here is a recognition of the doctrine that lot-owners in a town site, even though the town site entry had not been perfected, should have filed their adverse claims, if any they

had, to the application for a patent to mining ground, and
that their failure so to do barred their right.

Justice Field continues: "The right of the government,
therefore, passed to him; and though its deed, that is, its
patent, was not issued to him until January 31, 1882, the
certificate of purchase, which was given to him upon the
entry, was, so far as the acquisition of title by any other
party was concerned, equivalent to a patent. It was not
until the 28th of July following that the probate judge en-
tered the town site. The land had then ceased to be the
subject of sale by the government. It was no longer its
property. It held the legal title only in trust for the holder
of the certificate. *Witherspoon* v. *Duncan*, 4 Wall. 210,
218. When the patent was subsequently issued, it related
back to the inception of the right of the patentee."

And so we say that, by the location of the Smoke-house
claim, the ground included within its boundaries ceased to
be the subject of sale by the government. It was no longer
the property of the government. It held the legal title in
trust for the locator of the claim, or his grantees; and, when
the patent was subsequently issued, it related back to the
inception of the right of the patentee, which was the loca-
tion of the claim.

Speaking of reservations and exceptions of municipal im-
provements in a patent to a mining claim, Justice Field
fully justifies all we have said on that subject. His lan-
guage is as follows: "The position that the patent to the
plaintiff should have contained a reservation excluding
from its operation all buildings and improvements not be-
longing to him, and all rights necessary or proper to the
possession and enjoyment of the same, has no support in
any legislation of congress. The land officers, who were
merely agents of the law, had no authority to insert in the
patent any other terms than those of conveyance, with re-
citals showing a compliance with the law and the condi-
tions which it prescribed. The patent of a placer mining
claim carries with it the title to the surface included within

the lines of the mining location, as well as to the land beneath the surface."

Speaking of the possibility of acquiring title to a mineral claim by virtue of a town site patent, Justice Field continues: "Whilst we hold that a title to known valuable mineral land cannot be acquired under the town site laws, and therefore could not be acquired to the land in controversy under the entry of the town site of Deadwood by the probate judge of the county in which the town is situated, we do not wish to be understood as expressing any opinion against the validity of the entry, so far as it affected property other than mineral lands, if there were any such at the time of the entry."

That is equivalent to saying, what we have already said in this decision, that the town site patent took hold of the non-mineral lands included within its limits, but did not touch or in any manner affect the mining claims therein; and hence that the patent to the Butte town site did not affect the Smoke-house location; and further, that there is not and cannot be any conflict between a town site and a mining claim patent.

The decision of Justice Field continues: "The acts of congress relating to town sites recognize the possession of mining claims within their limits; and in *Steel* v. *Smelting Co. etc.* 106 U. S. 447, we said that 'land embraced within a town site on the public domain, when unoccupied, is not exempt from location and sale for mining purposes; its exemption is only from settlement and sale under the pre-emption laws of the United States. Some of the most valuable mines in the country are within the limits of incorporated cities, which have grown up on what was, at its first settlement, part of the public domain; and many of such mines were located and patented after a regular municipal government had been established.' . . . 'It would seem, therefore, that the entry of a town site, even though within its limits mineral lands are found, would be as important to the occupants of other lands as if no min-

eral lands existed. Nor do we see any injury resulting therefrom, nor any departure from the policy of the government; the entry and the patent being inoperative as to all lands known at the time to be valuable for their minerals, or discovered to be such before their occupation or improvement for residences or business under the town site title.'"

In the case of *Sparks* v. *Pierce,* 115 U. S. 412, it is said that a patent to a mineral claim is itself evidence that all the requirements of the law for its sale have been complied with.

And so the Smoke-house patent was itself evidence that, in the discovery, the location of the claim, and in all proceedings up to the issuance of the patent, the law had been complied with. The Smoke-house location was known to exist before the town site entry. This patent related back to the location in 1875, and fixes the mineral character of the claim at that time, and at all subsequent times, up to the date of the issuance of the patent in 1881. It was, therefore, a valid mining claim and possession in 1877, when the town site patent was issued, and necessarily excepted therefrom.

The judgment in each of the foregoing cases is hereby affirmed, with costs.

*Judgment affirmed.*

McLEARY, J., and BACH, J., concur.