# UNITED STATES, APPELLANT, *v.* HENRY WILLIAMS ET AL., RESPONDENTS.

TIMBER ON PUBLIC DOMAIN — *Act of Congress as to same* — *Regulation of interior department* — *Repeal.* — An Act of Congress (45th Congress, 2d Sess. ch. 150), authorized the felling and removal of timber from public lands in Montana, by persons who were citizens of the United States, and *bona fide* residents of the Territory, for building, agricultural, mining, and other domestic purposes, subject to such rules and regulations as might be prescribed by the secretary of the interior. Certain rules and regulations of the secretary prohibited the cutting of timber less than eight inches in diameter; and while these were in force, as alleged in the complaint, in an action of the United States against the defendant, for the unlawful cutting and conversion of timber, the defendant cut a large quantity of timber alleged to have been, at the time, less than eight inches in diameter. The complaint also set forth that one of the defendants was not a citizen of the United States, or a resident of Montana, and that the timber had been cut for speculation. While the action was pending in court, new rules and regulations made by the secretary so modified the former that the prohibition as to the cutting of timber less than eight inches in diameter was removed. At the trial the plaintiff offered to prove that the defendant Williams cut from the public mineral lands of the United States (within the time prohibited) certain timber thereon, which was less than eight inches in diameter, and that he converted the same. An objection to the admission of such testimony was sustained by the court, on the ground that the rules and regulations in force when the timber was cut and the action begun had been abrogated by those of later date aforesaid, and that the action, therefore, in so far as it related to timber less than eight inches in diameter, could not be sustained. *Held,* that the rules and regulations of the secretary of the interior under the said act, having been upheld by this court as constitutional in *U. S. v. Williams,* 6 Mont. 379, must necessarily be considered as a part of said act of Congress, and as having the same force as they would if contained therein; that the rules applicable to the repeal of statutes must control these, and that, therefore, under section 13 of the United States Revised Statutes (concerning repeals), the rules and regulations abrogating the prohibition as to cutting timber less than eight inches in diameter did not affect plaintiff's right of action, as alleged in the complaint, and it was error to exclude the testimony offered. *Held, also,* that while it is a principle of law as to criminal liability, or forfeitures and penalties annexed as kinds of punishment, that the statute creating the same must be in force when judgment is recovered, an exception to the rule exists where the right vested is in the nature of a contract, and that the right of action vested in the plaintiff is within the exception, even though it is for a tort. *Held, also,* that when the secretary of the interior, under authorized rules and regulations, added to the act of Congress the prohibition as to cutting timber less than eight inches in diameter, that any cutting of the kind so described was a trespass at common law, independent of the act of Congress, for which the plaintiff had a full and adequate remedy, not affected by any subsequent rules and regulations of the secretary.

*Appeal from the District Court, Deer Lodge County.*

## STATEMENT.

An action in the District Court of Deer Lodge County, brought by the United States, as plaintiff, to recover the value

of certain wood, alleged to have been unlawfully cut upon unsurveyed mineral lands of the public domain, between December, 1884, and December, 1885. Upon the trial, an objection to evidence offered by the plaintiff was sustained, and thereupon the plaintiff allowed judgment to be entered in favor of the defendants, and appealed. The action was brought under the Act of Congress of June 3, 1878, regulating the cutting of timber on mineral lands of the public domain. (Laws of 45th Congress, 2d Sess. ch. 150.) The said act of Congress, and the facts necessary to an understanding of the case, are set forth in the opinion.

*R. B. Smith,* United States District Attorney, for Appellant.

The question is whether the repeal of a statute, under which a civil right of action has vested, before the same is merged into a judgment, bars said action. In all actions and prosecutions which are criminal, or where the action is in the nature of a *qui tam* action, or if the repealed statute only affected the remedy *without entirely destroying the right,* then the rule invoked by the counsel for the respondents is correct. But where by virtue of a statute a right of civil action accrues, and becomes vested in any person or party, the repeal of that statute does not work a bar to the further prosecution of such suit. (See *Dixon* v. *Dixon's Ex'rs,* 4 La. 188; 23 Am. Dec. 478, et seq.; *Steamship Co.* v. *Joliffe,* 2 Wall. 450; *Memphis* v. *U. S.* 97 U. S. 294–298; *Commonw.* v. *Specht,* 9 L. Bar. 139, Brightley's Digest Pa. Rep. p. 1852, and Sedgwick on Statutory Construction of Retrospective Laws, 2d ed. p. 113; U. S. Rev. Stats. § 13.) But in this case the right of action does not arise by virtue of a statute. The right of action for timber cut on the public domain is a right in favor of the United States, by virtue of the common law. The statute of June 3, 1878, is a license or permission to cut timber under certain conditions, and cutting timber other than by permission of the statute and regulations creates a right of action by virtue of the common law. The common law has not been repealed. The regulations have only been further extended or modified, so that the cutting of lodge pole pine is now permitted. All statutes are to be construed with respect to the future, unless a retrospective intent on the part of the legis-

lature clearly appears. (*People's Fire Ins. Co.* v. *Hartshorne,* 84 Pa. St. 453, and cases cited on page 456; *Neff's Appeal,* 21 Pa. St. 247; *In Matter of Juniata Township,* 31 Pa. St. 301; Sedgwick on Statutory Construction, p. 160, et seq. and notes; *Commonw.* v. *Sudbury,* 106 Mass. 268; *O'Donoghue* v. *Akin,* 2 Duval, 478; *Nall* v. *Springfield etc.* 9 Bush, 674; *Commonw.* v. *Cook etc.* 8 Bush, 222; 8 Am. Rep. 456.)

*Robinson & Stapleton,* and *W. W. Dixon,* for Respondents.

The regulations of the secretary of the interior of May, 1887, repealed those in force in 1884 and 1885, and contained no saving clause as to rights accrued under the latter. The repeal of a statute puts an end to all prosecutions under it, and to all proceedings growing out of it, pending at the time of repeal, civil as well as criminal. (Sedgwick on Stat. and Con. Law, 2d ed. p. 108, etc., and notes; *Yeaton* v. *U. S.* 5 Cranch, 281; *Schooner Rachel* v. *U. S.* 6 Cranch, 329; *The Irresistible,* 7 Wheat. 551; *Norris* v. *Crocker,* 13 How. 429; *Ex parte McCardle,* 7 Wall. 514; *Insurance Co.* v. *Ritchie,* 5 Wall. 541; *The Assessor* v. *Osbornes,* 9 Wall. 575; *U. S.* v. *Tynen,* 11 Wall. 95.) The cases cited by appellant are where rights of third parties had intervened and vested, and are not applicable to the case at bar.

McCONNELL, C. J.—This is an action brought for the purpose of recovering the value of twenty-eight thousand cords of wood, cut on the public domain during the years of 1884 and 1885. It was brought under the Laws of the 45th Congress, Second Session, chapter 150 (Act June 3, 1878), which provides that "all citizens of the United States and other persons, *bona fide* residents . . . . of Montana, shall be and are hereby authorized and permitted to fell and remove, for building, agricultural, mining, or other domestic purposes, any timber or other trees growing or being on the public lands, said lands being mineral, . . . . subject to such rules and regulations as the secretary of the interior may prescribe for the protection of the undergrowth growing upon such lands, and for other purposes." Under the provisions of the above act of Congress, the secretary of the interior prescribed certain rules and regulations, on the first day of June, 1883, which, among other things, for-

bade the cutting of timber which was under eight inches in diameter. These rules and regulations were in force at the time it is alleged the timber was cut; but before the trial of the cause, and while it was pending in court, the secretary of the interior had so modified said rules and regulations, as to allow the cutting of timber less than eight inches in diameter. This action was brought under the provisions of the aforesaid act of Congress. It charges, in substance, that the defendant and one A. Smith were partners, under the name and style of Williams and Smith; that the defendant Williams is not a citizen or *bona fide* resident of the United States or Montana Territory, and that they cut in Silver Bow County, in Norton Gulch, a great amount of pine trees and other timber, being about two hundred thousand in number, and out of said trees manufactured twenty-eight thousand cords of wood; that said trees were growing upon the unsurveyed mineral lands, in said gulch and in said county, in the Territory of Montana; that more than one half of the trees so cut were less than eight inches in diameter; that they were cut unlawfully and wrongfully, and contrary to the statutes of the United States, and the public rules and regulations prescribed thereunder for the protection of the timber of the United States, and that said timber was cut for sale and speculation, and not for the purposes set forth in the above statute; that the wood so cut was banked up in the gulch near a wood flume, and a portion of it entered and floated down said flume to the railroad; that it was worth four dollars per cord; and that it justly and rightfully belonged to the United States. The complaint closes with the prayer for a judgment against the defendant for the value of said cord-wood at the price of four dollars per cord, making a total of twelve thousand dollars. The *rules and regulations* aforesaid, forbidding the *cutting of timber* under eight inches in diameter, were in force at the time that the declaration alleges that the defendant and his copartner, Smith, unlawfully cut the timber described in the complaint. Upon the trial of this case, the United States district attorney offered to prove that "the defendant, Henry Williams, cut from the public mineral lands of the United States from December, 1884, to December, 1885, the trees and timber growing thereon, which trees and timber were less than eight inches in diameter,

and that he converted the same to his own use and benefit;" to the admission of which testimony the defendant then and there objected, for the reason there is nothing in the law or regulations of the secretary of the interior, now in force or effect, forbidding the cutting of timber of that size, and that the rule of the secretary of the interior in force at the time this suit was brought, forbidding the cutting of timber of less than eight inches in diameter, has since been revoked or modified; and the court sustained the defendant's objections, and ruled "that the regulations that were in force when this action was commenced, and when the timber was cut by the defendant, were abrogated by the regulations of May, 1887, and that this claim, which is made in this action, cannot now be enforced, so far as relates to timber less than eight inches in diameter." From the above it will be seen that the evidence tending to prove that the defendant cut from the public mineral lands of the United States, from December, 1884, to December, 1885, the trees and timber growing thereon, which trees and timber were less than eight inches in diameter, and that he converted the same to his own use and benefit, was excluded by the court upon the ground, as set forth in the transcript as copied above, that the new regulations made by the secretary of the interior, permitting timber less than eight inches in diameter to be cut, were in force at the time the evidence was offered; that the rules and regulations prescribed the 1st of June, 1883, forbidding the cutting of such timber, were revoked, and the plaintiff had no right of action that it could maintain under the law. The exclusion of this testimony being conclusive of the case against the plaintiff, the district attorney declined to proceed further; the case was withdrawn from the jury, and judgment dismissing it was rendered, from which an appeal was taken to this court.

1. We do not deem it necessary to notice the criticism made by counsel for the respondents, that the proposition of the district attorney was not broad enough to include everything necessary to make out his case. We think that a fair construction of the language used in the transcript, denoting what was proposed to be proved, will embrace all that was necessary to make out the case under the complaint. Besides, we prefer to rest the determination of this case upon the more meritorious ground, whether

the plaintiff had a right to maintain its action at all after the revocation of the regulation which made the cutting originally unlawful.

2. The consideration of this question involves the further question, whether the repeal of the regulation forbidding the cutting of timber under eight inches in diameter is a bar to the right of action of the plaintiff. This case was before us at the January term, 1887. (See 6 Mont. 397.) It was then held that the act under consideration, wherein authority was conferred upon the secretary of the interior to prescribe rules and regulations in regard to the cutting of timber, is constitutional. The court, in that case, in commenting upon this question, uses the following language, to wit: "Such a restriction was not a delegation of legislative powers, and cannot by any fair process of reasoning be so considered. The rules and regulations of the secretary of the interior made under this statute are not in this sense laws, and cannot be so considered. . . . . The principle of constitutional law, forbidding the delegation of legislative powers, was never intended to have any such effect. It would be impossible for Congress to prescribe every detail governing the administration and management of every department of the government; and if it were possible, it would not be wise." It will be seen from the above extract of the opinion of the court that it held that the rules and regulations of the secretary of the interior made under this statute are not "in this sense laws." While they are not put upon an equal footing of dignity with the enactments of Congress, still the act of itself provided for the enjoyment of the privileges granted, under and subject to such rules and regulations as may be prescribed by the secretary of the interior for the protection of the undergrowth upon such land, and for other purposes, and, these rules and regulations having been upheld as constitutional by this court, they necessarily become a part of the act of Congress under which they were made, and have the same binding effect upon all persons seeking to take advantage of the license granted by said act, as if they had been contained in the act itself. Precisely what the court meant, when it said they were not laws in the particular sense indicated, is not very clear. Certainly, if they are to be upheld at all, it cannot be doubted that they have all the effect

of laws, as much so as if they had been integral portions of the act of Congress itself. While such regulations are in force, the statute must be read with them as a portion of it, in order to understand the full meaning and scope of the law. It should be borne in mind that the government of the United States is the owner of the trees growing upon the public domain in as full and ample a sense as an individual would be who might have the fee-simple title to the land upon which they were growing, and that any individual cutting timber from the public domain is a trespasser, and for every such trespass the United States has a right of action as ample and complete as an individual would have under the same circumstances.

It should be further born in mind that, with the rules and regulations of the secretary of the interior, superadded to the act of Congress itself, the defendant had no more right to cut the timber off the public domain, under eight inches in diameter, than if such licensing act had never been passed at all. The statute gives a sweeping license to cut timber, limited only by the uses to which the timber is to be applied, and subject to such rules and regulations as the secretary of the interior may prescribe. Just as soon as these regulations were made, forbidding the cutting of timber under eight inches in diameter, the license granted by the act of Congress was revoked to that extent, and the defendant, if guilty as charged in the complaint, which is assumed for the purposes of this decision, was as much guilty of a trespass as if there had never been such an act passed. The question then arises, what were the rights of the United States in relation to this timber, under the conditions alleged in the complaint, and offered to be proven by the excluded testimony? The timber had been unlawfully cut and converted, and the right of the United States to receive compensation for its property completely vested. What effect, then, did the subsequent revocation of these rules and regulations, touching the cutting of such timber, have upon this right? We take it that the modification of the rule is analogous to the repeal of the statute, and that its effect must be determined by the rules of law, governing the repeal of the statute under which the alleged right had arisen, and which was being prosecuted in the courts, but still had not been reduced to a judgment. It would be instructive

to make a short review of •the law upon this subject. Chief Justice Tindal, in the case of *Key* v. *Goodwin*, 4 Moore & P. 341, is quoted approvingly in Sedgwick on Const. & Stat. Law, 108, and lays down the rule as follows, to wit: "The effect of a repealing statute, I take to be to obliterate the statute repealed as completely from the records of Parliament as if it had never been passed, and that it must be considered as a law that never existed, except for the purpose of those actions and suits which were commenced, prosecuted, and concluded while it was an existing law." Mr. Sedgwick, in the same connection, remarks that there can be no legal conviction unless the act is contrary to law at the time it is committed; nor can there be a judgment unless the law is in force at the time of the indictment and of the judgment. Hence a repealing law is sometimes made to operate prospectively, and a saving clause is inserted to prevent the operation of the repeal, and continuing the repealed law in force as to all pending proceedings and prosecutions. And it is an undisputed principle of law that, so far as criminal liability is concerned, the law must be in force at the time of the judgment, or no judgment can be rendered; and even after judgment, and before the execution of the sentence, if the law is repealed, judgment will be arrested. So it is in regard to forfeitures and penalties, which are annexed to statutes as a kind of punishment for the violation of such statutes. It has been held that the repeal of such statutes, pending an action for the recovery of the penalty or forfeiture, takes away the right of action, and ends the controversy. "And," remarks the same author (p. 111), "the same rule applies to all proceedings, whether civil or criminal, going on by virtue of the statute at the time of its repeal. So, if the statute confers jurisdiction in civil cases, and though suits may be instituted and pending at the time of the repeal, the jurisdiction is gone, and with it the whole proceeding falls to the ground." But there are certain exceptions to this general rule. Where trouble and expense may have been incurred, and suits may have been instituted, the effect of a retrospective construction of repealing statutes is entirely to derange the plans and defeat the arrangements of parties who have proceeded on the faith of antecedent legislation, and an effort has been made to arrest these results, and certain excep-

tions have been made to this retroactive legislation. Where, then, a right in the nature of a contract has vested under the original statute, then the repeal does not disturb it, and, indeed, this has been protected, as against the legislation of the different States of the American Union, by a provision of the Federal Constitution which prohibits them from passing any law impairing the obligation of contracts. There are also other cases besides those that arise under contracts, which form a second exception to the general rule declared, as we have seen, as to the operation of repealing statutes. It has been held that the enactments of the legislature, creating new exceptions and defenses, or modifying previous remedies, shall be so construed as not to affect rights of action which have attached and become vested under the original law, and existing at the time of the repeal of the statute. In the case of *Steamship Co.* v. *Joliffe,* 2 Wall. 450, the Supreme Court of the United States held, under an act of Congress which provided that where a pilot in the harbor of San Francisco offered a vessel his services, and they were rejected, he was entitled to half pilotage fees, such as were provided for by the statute; and when pending an action for the recovery of such fees under this state of facts, the act under which the services were rendered was repealed, that the repeal did not affect the right of the pilot to recover such fees, the right having become vested so that it could not be interfered with by the repealing statute; and, commenting upon this, Mr. Justice Field observes, "that the transaction between the pilot and the master or owners cannot be strictly termed a contract, but it is a transaction to which the law attaches similar consequences. It is a *quasi* contract. The absence of assent on the part of the master or owner of the vessel does not change the case. In that large class of transactions designated in law as 'implied contracts,' the assent or convention which is an essential ingredient of an actual contract is often wanting. Thus, if a party obtain the money of another by mistake, it is his duty to refund it, not from any agreement on his part, but from the general obligation to do justice which rests upon all persons. In such case the party makes no promise on the subject, but the law consulting the interests of morality implies one, and the liability thus arising is said to be a liability upon an implied contract." It will be

observed that the court in this case maintained this right of action, notwithstanding the law under which it was brought had been repealed, upon the ground that it came within the first exception, to wit, that it was a contract, or partook so nearly of the nature of a contract as to be brought within that exception. While the action in the present case cannot be said to be one of contract, but an action of tort for the wrongful cutting and conversion of the timber of the plaintiff, it is hard to imagine a distinction between the right to recover for trees cut and converted wrongfully, and money due for their delivery under contract. If the right is vested in the one case, it seems to us it is equally as clearly vested in the other. Indeed, the timber, when cut, may be deemed personalty, and the plaintiff might waive the tort, and sue for it in *assumpsit* as so many cords of wood sold and delivered. It seems to us, then, that the plaintiff's right in this case comes within the exceptions to the general rule already stated, by which the right of action is defeated upon the repeal of the law under which it was brought; and indeed there is a distinction between the case at bar and all the cases to which our attention has been called, in this: the right of action on the part of the plaintiff does not depend upon the rules and regulations of the secretary of the interior, but it is upon the common-law right to recover for a trespass committed. The only effect of these rules and regulations was to remove the protection of the license granted by the act of Congress; and when the rules were modified, or in legal effect repealed, so as to renew the license that would have protected the defendants, it was not in point of fact a repeal of the statute under which the action was brought, because said action is based upon the common-law right of the plaintiff to recover for the alleged trespasses. But if there was any doubt as to the right of the plaintiff to maintain this action under the circumstances, it is settled by section 13 of the United States Revised Statutes, which is as follows, to wit: "The repeal of any statute shall not have the effect of releasing or extinguishing any penalty, forfeiture, or liability incurred under such statute, unless the repealing act shall so expressly provide; and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability." As

we have already seen, these flexible rules and regulations become *sub modo* a part of the act of Congress itself, and come within the provisions of said section 13 referring to the repeal of statutes. The statute was enacted manifestly for the purpose of modifying the common-law doctrine above stated. We think, then, that the court erred in the rejection of this testimony, for which the case will be reversed, and remanded for a new trial.

*Judgment reversed.*

BACH, J., and LIDDELL, J., concur.