CHILBERG v. CONSUMERS' MILK CO.

(Second Division. Nome. January 12, 1907.)

1. MINES AND MINERALS (§ 29*)—EJECTMENT—PUBLIC LANDS—PATENT.

In 1899 plaintiff located and is yet the owner of a valid placer mining claim, upon which a portion of the town of Nome was afterward built. Title to the townsite was subsequently conveyed to a townsite trustee by United States patent. The trustee conveyed certain lots within the limits of plaintiff's placer claim to defendant's grantor. *Held*, on ejectment by plaintiff to oust defendant, that no title to a prior existing valid placer mining claim can be acquired by a townsite lot claimant through subsequent patent issued to the townsite trustee. *Held*, that the prior, existing, valid location of the placer mining claim effectually barred the acquisition of any adverse title thereto by patent or otherwise.

[Ed. Note.—For other cases, see Mines and Minerals, Dec. Dig. § 29.*]

2. PUBLIC LANDS (§ 39*)—TOWNSITES—ADVERSE CLAIM.

The owner of a valid mining claim, over which is sought to be extended a townsite patent by the United States, is not required to file an adverse claim, for the very sufficient reason that the townsite law of 1891 expressly excludes mining claims and possessions from any title acquired by force and authority of that law.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 39.*]

This action is in ejectment, brought to recover possession of three lots in the incorporated town of Nome, Alaska, designated in the plat of the townsite of Nome prepared under the supervision of Porter J. Coston, townsite trustee, and numbered 35, 36, and 37, in block No. 10, and also to recover damages for the unlawful withholding thereof from the plaintiff. The plaintiff alleges that he is the owner of the Chilberg Beach mining claim, of which said lots are a part, and entitled to the

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

possession thereof by virtue of a location, made on the 13th day of July, 1899, of said Chilberg Beach mining claim under the mining laws of the United States.

To the complaint the defendant company answers by a denial of the ownership of the plaintiff in said lots and the alleged unlawful ouster by the defendant. The defendant further pleads affirmatively for a second and further defense that in the summer of 1903 the Surveyor General for the district of Alaska approved a survey and plat of the out boundaries of the town of Nome, made under his direction, for the purpose of making an application for a United States patent for the land included in said survey under section 2387 of the Revised Statutes, as amended by the act of March 3, 1891 (U. S. Comp. St. 1901, p. 1457); that on January 11, 1904, the Secretary of the Interior appointed Porter J. Coston as trustee for townsite entries in said town; that on August 5, 1904, he entered and purchased said platted and surveyed land; that on April 13, 1905, he approved another survey and plat of the tract so purchased into lots, blocks, streets, and alleys; that on January 16, 1906, he received a patent from the government of the United States for said tract in trust to hold for the use and benefit of the occupants of the townsite of Nome, Alaska, according to their respective interests; that the three lots described in the complaint are a part of said surveyed and purchased tract; that as such trustee on July 18, 1906, Coston executed a deed for said three lots to the Pacific Coal & Transportation Company; and that afterwards the Pacific Coal & Transportation Company sold and conveyed said lots to the defendant.

The plaintiff meets the answer by a reply, wherein he admits all the allegations thus recited, and pleads, by way of avoidance of their legal effect, that since July 13, 1899, the land described in the complaint was held, and still is possessed, occupied, and worked, as a placer mining claim in accordance

with the mining laws of the United States, and that the patent to the townsite trustee did not convey any right, title, or interest, or right of possession, in or to any of the lots.

The defendant thereupon demurred to the further reply of the plaintiff, on the ground that it does not contain facts suffi-cient to constitute a defense to the affirmative answer, in that it is not a sufficient reply to the facts stated in the answer and admitted by the reply.

William H. Packwood, for plaintiff.

P. J. Coston and Ira D. Orton, for defendant.

MOORE, District Judge. The demurrer, because of its presenting points somewhat new in this court, will now receive careful attention. The demurrer raises the question whether, the issue of the patent and the regularity of all the proceedings as recited leading thereto being taken as admitted, the patent conveyed any title or interest or right of possession to the lots in dispute which will avail the defendant against the title of the plaintiff, resting on a location of a date prior to the issue of the patent.

The second and further defense of the answer in setting up the patent and the proceedings ending therein as new matter must be taken as an admission of the facts embodied in the complaint, one of which is that the plaintiff was at the date of the entry of the townsite the owner of a valid and subsisting mining location, made July 13, 1899, and covering the lots in dispute. By implication "the further defense" asserts that defendant's title to the lots, originating in a patent and transferred by deed, is paramount to the title of the plaintiff acquired by a mining location of a date prior to the patent. It is this conclusion drawn from the allegations of the further defense which plaintiff traverses by his further reply.

To bring into clear view the nature and extent of the interest which a locator of placer mineral ground acquires by means

of a location thereof, valid in all respects, these excerpts from various authoritative decisions of courts are given: One, an early California case, Merced Min. Co. v. Fremont, 7 Cal. 317, 68 Am. Dec. 262, announces this doctrine:

"The owner of a mining claim has in practical effect a good vested title to the property, and should be so treated until his title is divested by the exercise of the higher right of the superior proprietor. His rights and remedies in the meantime are not trammeled by the consideration that the higher rights to reclaim the property exists in another, which right may possibly, but not probably, be exercised."

"A location," says Chief Justice Waite, in Belk v. Meagher, 104 U. S. 285, 26 L. Ed. 735, "when perfected, has the effect of a grant by the United States of the right of present and exclusive possession of the land located." Gwillim v. Donnellan, 115 U. S. 49, 5 Sup. Ct. 1110, 29 L. Ed. 348, citing above.

"A mining claim perfected under the law is property in the highest sense of that term, which may be bought, sold, and conveyed, and will pass by descent." Forbes v. Gracey, 94 U. S. 762, 24 L. Ed. 313; Belk v. Meagher, 104 U. S. 283, 26 L. Ed. 735.

"A patent when issued [for a mining claim] relates to the time of the location, from which time it takes effect. The location itself has the effect of a grant. The patent is simply the evidence of the precedent grant, and must necessarily relate back to it." Talbot v. King (1886) 6 Mont. 76, 9 Pac. 434; Barringer and Adams on Mines, 428.

These various definitions and descriptions may be condensed in one proposition below:

"A mining location carries with it the right to the exclusive possession and enjoyment of the surface within the boundaries of the location and all the land beneath the surface." Belk v. Meagher, 104 U. S. 283, 26 L. Ed. 735.

Now, what was conveyed by the patent to P. J. Coston, the townsite trustee? By section 16 of the act of Congress of March 3, 1891 (26 Stat. 1095, c. 561 [U. S. Comp. St. 1901, p. 1459]), it is provided:

"That townsite entries may be made by incorporated towns and cities on the mineral lands of the United States, but no title shall be

acquired by such towns or cities to any vein of gold, silver, cinnabar, copper, or lead, or to any valid mining claim or possession held under existing law."

Under this law the defendant's grantor in behalf of the town of Nome proceeded to acquire a patent for the lots in controversy. It seems that, according to the construction by the Supreme Court of the United States of the townsite laws enacted prior to this act, patents conveyed no title to known valuable mineral lands, whether located or not. The design of this act was to authorize townsites to be located on and over mineral lands of the United States not at the time appropriated for mining purposes, but expressly to forbid the acquisition in incorporated towns of titles by means of a townsite patent to all veins of gold or other enumerated minerals, and any valid mining claim or possession held under existing law.

To this effect is the following utterance of the Supreme Court of Montana in one of the famous Smokehouse Lode Cases, construing the townsite law as it was before the enactment of the act of March 3, 1891:

"An exception in a townsite patent, excluding from its provisions all mines, mining claims, and possessions held under existing law, is an exception required by the law, and made by the law itself, and is conclusive upon the question that the government did not [convey] and did not intend by such townsite patent to convey any valid mine, mining claim, or possession held under existing law, and it is therefore impossible under a patent to a townsite to acquire any interest in any valid mine or mining claim or the surface thereof." Butte City Smokehouse Lode Cases, 6 Mont. 397, 12 Pac. 858.

If, after this judicial declaration of the legislative intent as expressed in the townsite laws, there remained after its delivery basis for reasonable doubt in respect to the accuracy of its doctrine, the plain words of the act of 1891 have left no room for uncertainty as to its meaning.

The owner of a valid mining claim, over which is sought

to be extended a townsite patent by the United States, is not required to file an adverse claim, for the very sufficient reason that the townsite law of 1891 expressly excludes mining claims and possessions from any title acquired by force and authority of that law, and the law does not require the doing of a vain and fruitless act. There is no conflict under the law between the rights flowing from a mining location and from a townsite patent. The titles take hold of and affect property that is entirely separate and distinct. Butte City v. Smokehouse Cases, 6 Mont. 397, 12 Pac. 865, supra; Deffeback v. Hawke, 115 U. S. 392, 6 Sup. Ct. 95, 29 L. Ed. 423; Davis v. Wiebbold, 139 U. S. 530, 11 Sup. Ct. 628, 35 L. Ed. 238; 1 Snyder on Mines, § 682, and authorities cited in footnote.

Impelled by the force of the authorities cited, I am convinced that the title by patent set up by the defendant in denial of the plaintiff's right of exclusive possession of the premises in dispute can only extend to and embrace such right and interest in the land as the act of March 3, 1891, will permit. As already stated, that act expressly reserves from the operation and effect of a patent "any mining claim or possession held under existing law."

The inference from the authorities, as applied to the pleadings, is equally certain that the locator of the Chilberg Beach mining claim, by his location in 1899, acquired the exclusive right to the use and enjoyment of the surface included within the limits of said location and all the land beneath with its minerals, and that this right was in full force and vigor at the institution of this action, August 3, 1906. The further conclusion follows from these deductions that the title by patent and deed gives to the defendant no right of possession of the lots in question so long as the plaintiff's rights therein under his location continue, and that meanwhile defendant's rights therein remain wholly subordinate to those of the plaintiff.

It is urged by the counsel appearing for the defendant at the argument that the patent cannot be attacked collaterally in a court of law. This contention is not sound, I conceive, under the facts and circumstances of the case. The plaintiff, finding himself dislodged from the possession of his mining claim, seeks his remedy. He cannot successfully invoke the aid of the Land Department, for that department will deny him relief, unless he will enter his claim for patent. If his choice be to stand alone upon his rights as a locator, he may contend before the department for official recognition of his rights, as did the Nome-Sinook Mining Company and R. T. Lyng, when they protested before the Land Department by a motion for a review of the department's previous refusal to consider their objections to the granting of the townsite patent to a trustee for the inhabitants of the townsite of Nome. In that proceeding the Secretary of the Interior said:

"The protestants may, if they choose, apply for patent and have all questions touching their right to the legal title to the lands claimed by them inquired into and determined, or they may continue to rest upon their claimed possessory rights under their locations, in which latter event, should their rights be invaded, their remedy will be in the courts, where such matters are clearly cognizable." 34 Land Dec. 279.

Under the authorities cited, it will not be necessary in the case now under consideration for the plaintiff to attack the townsite patent for invalidity. In fact, the plantiff, by his pleading, concedes its validity. He denies to it the legal effect which the defendant attaches to it.

That the quantity of interest which a townsite patent is competent to convey may become the subject of inquiry in an action at law is sanctioned by the Supreme Court, speaking by Justice Field, in Steel v. St. Louis Smelting & Refining Company, 106 U. S. 452, 1 Sup. Ct. 389, 27 L. Ed. 226, wherein the court said:

3 A.R.—16

"If they [the lands included in a patent] never were the property of the United States, or if no legislation authorized their sale, or if they had been previously disposed of, or reserved from sale, the patent would be inoperative to pass the title, and objection to it could be taken on these grounds at any time, and in any form of action. In that respect the patent would be like the deed of an individual, which would be inoperative if he never owned the property, or had previously conveyed it, or had dedicated it to uses which preclude its sale."

The authorities herein cited established the doctrine, as I conclude, that the law does not empower the government to convey by a townsite patent a mining location held before and at the date of the patent; in other words, that land so held is reserved from entry and sale under the townsite laws. If the Supreme Court, in this leading case upon the subject, correctly defines the conditions under which a patent is open to collateral attack, then every part of the Chilberg Beach mining claim, being under the authorities cited absolutely reserved from sale by the act of 1891, the townsite patent must be subject to the objection in this action that it does not convey any interest in the property in controversy.

Yielding to the force of the law as I find it, the opinion of the court now is that the demurrer should be overruled.