WILLIAMS v. GAYLORD et al.

(Circuit Court of Appeals, Ninth Circuit. May 14, 1900.)

No. 581.

1. CORPORATIONS—MANNER OF CONVEYING REAL ESTATE—REGULATION BY STATE STATUTE.

The manner in which real estate may be transferred by a corporation, either domestic or foreign, is a matter which it is within the power of the state in which such real estate is situated to regulate.

2. SAME—MORTGAGE BY MINING CORPORATION—CALIFORNIA STATUTE.

The California act of April 23, 1880 (St. 1880, p. 131, § 1), which provides that "it shall not be lawful for the directors of any mining corporation to sell, lease, mortgage, or otherwise dispose of the whole or any part of the mining ground owned or held by such corporation, * * * unless such act be ratified by the holders of at least two-thirds of the capital stock of such corporation," having been construed by the supreme court of the state to apply to foreign as well as domestic corporations owning mining ground in the state, and to render such ratification, in the manner prescribed by the statute, absolutely essential to the power of the directors to convey or mortgage such mining ground, such construction is binding upon the federal courts.

Appeal from the Circuit Court of the United States for the Northern District of California.

Thomas S. Ford (C. Walter Artz and Edward J. McCutchen, of counsel), for appellant.

Curtis H. Lindley, Henry Eickhoff, and Frederick Searls, for appellees.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge. This is a suit in equity to foreclose a mortgage or deed of trust executed July 1, 1890, by the Gold Hill Mining Company, a corporation organized and existing under and by virtue of the laws of the state of West Virginia, in favor of G. Livingston Morse, as trustee, to secure the payment of certain bonds issued by the corporation upon certain mining property situate in Nevada county, Cal. Morse died in 1891, and Frederick Williams, appellant

herein, was substituted as trustee of the trusts mentioned in the mortgage or deed of trust. He commenced this suit in 1897 to foreclose the indenture against the Gold Hill Mining Company. The appellees Gaylord, Maddrill, and Rolfe were made parties to the suit under an averment that they had, or claimed to have, some interest in, or lien upon, the premises sought to be foreclosed, as judgment creditors, which interest or lien, if any, was alleged to be subsequent in time to the lien of appellant's mortgage. The evidence upon this point shows that the judgments obtained by them were entered in the years 1896 and 1897, long subsequent to the execution and recording of the indenture sought to be foreclosed. The corporation made default, and a decree pro confesso was entered against it in January, 1898. The judgment creditors, in their answer, among other things, alleged that the indenture was void because not made in conformity with the requirements of "An act for the further protection of stockholders in mining companies, approved April 23, 1880" (St. Cal. 1880, c. 131). This statute reads as follows:

"Section 1. It shall not be lawful for the directors of any mining corporation to sell, lease, mortgage, or otherwise dispose of the whole or any part of the mining ground owned or held by such corporation, nor to purchase or obtain, in any way, any additional mining ground, unless such act be ratified by the holders of at least two-thirds of the capital stock of such corporation. Such ratification may be made either in writing, signed and acknowledged by such stockholders, or by resolution duly passed at a stockholders' meeting called for that purpose."

The circuit court sustained this defense, and entered a decree dismissing the bill of foreclosure. From this decree the appeal herein is taken.

If this statute applies to foreign as well as domestic corporations, our duty is at an end. We are foreclosed by the decisions of the supreme court of California from giving any independent consideration to the construction of this act. In McShane v. Carter, 80 Cal. 310, 22 Pac. 178, the court was called upon to construe the act above quoted. In so doing the court said:

"We think that the provision of said act goes to the power or authority of the directors. It cannot be construed to relate merely to their personal liability, for no penalty is imposed upon them; and to so construe it would be to practically nullify the act. In our opinion, the directors of mining corporations have no power or authority to convey the mining ground without the consent of holders of two-thirds of the stock, given as prescribed by the act; and it follows without such consent the title does not pass. And if this be so, the question can be raised by any one who connects himself with the title of the corporation which owned the property, as well as by the stockholders thereof. Nor can the consent of the stockholders be presumed from the mere fact of the conveyance, whether under the corporate seal or not, for such consent or 'ratification' may be after the deed is executed, and hence is not necessarily or presumptively involved in the execution of such deed."

Under this decision there is no room for any discussion as to whether or not there has been any substantial compliance in the present case with the provisions of the statute. There was no literal compliance. And this is held absolutely essential by the decision in McShane v. Carter. This decision was followed in the subsequent cases of Milling Co. v. Kennedy, 81 Cal. 356, 362, 22 Pac. 679 (in which the principles

were applied to a foreign corporation); Mining Co. v. Maginness, 118 Cal. 131, 137, 50 Pac. 269; and Johnson v. California Lustral Co. (Cal.) 59 Pac. 595; and has, therefore, become the settled law of this state. The national courts are not permitted "to run counter to the decisions of the highest state court upon questions involving the construction of state statutes or constitutions on any alleged ground that such decisions are in conflict with sound principles of general constitutional law." Irrigation Dist. v. Bradley, 164 U. S. 112, 155, 17 Sup. Ct. 56, 41 L. Ed. 369. That we are absolutely bound by the decisions of the supreme court in McShane v. Carter and Milling Co. v. Kennedy is too well settled to require any citation of the numerous authorities upon this subject. It matters not that the courts of other states, in the construction of similar statutes, have expressed more liberal views with reference to compliance with the same statutory provisions. Were it an open question, such decisions would have, and have had, great weight and force in determining it. But, whatever our individual views may be, the fact remains that it is always our duty to follow the decisions of the highest court of a state in the construction of its own statutes, where no question of general or commercial law, or right under the federal constitution is involved. In such cases the question is not how the statute should be construed, but what construction has been given to it by the supreme court of the state? When that is ascertained, as here, by clear, plain, and unmistakable language, it is the duty of the national courts to follow it. Each state has the unquestioned right to determine for itself under what circumstances and upon what conditions property situated within the state may be conveyed, and the extent of the right conferred thereby.

In Brine v. Insurance Co., 96 U. S. 627, 636, 25 L. Ed. 858, following the decision in McGoon v. Scales, 9 Wall. 23, 19 L. Ed. 545, it was expressly held that the laws of the state in which land is situated control exclusively its descent, alienation, and transfer, and the effect and construction of instruments intended to convey it. The principles therein announced have been universally followed. Chicago Union Bank v. Kansas City Bank, 136 U. S. 223, 235, 10 Sup. Ct. 1013, 34 L. Ed. 341; Etheridge v. Sperry, 139 U. S. 266, 276, 11 Sup. Ct. 565, 35 L. Ed. 171; Cutler v. Huston, 158 U. S. 423, 429, 15 Sup. Ct. 868, 39 L. Ed. 1040; Wilson v. Perrin, 62 Fed. 629, 631, 11 C. C. A. 71; Hartford Fire Ins. Co. v. Chicago, M. & St. P. Ry. Co., 175 U. S. 91, 100, 20 Sup. Ct. 33, Adv. S. U. S. 33, 44 L. Ed. ——.

In Etheridge v. Sperry the court, upon this subject, said:

"The matter is not one of purely general commercial law. While chattel mortgages are instruments of general use, each state has a right to determine for itself under what circumstances they may be executed, the extent of the rights conferred thereby, and the conditions of their validity. They are instruments for the transfer of property, and the rules concerning the transfer of property are, primarily, at least, a matter of state regulation. We are aware that there is great diversity in the rulings on this question by the courts of the several states. But, whatever may be our individual views as to what the law ought to be in respect thereto, there is so much of a local nature entering into chattel mortgages that this court will accept the settled law of each state as decisive in respect to any case arising therein."

In Chicago Union Bank v. Kansas City Bank, supra, the court quoted, with approval, the language of Mr. Justice Field in Christy v. Pridgeon, 4 Wall. 196, 203, 18 L. Ed. 322:

"The interpretation within the jurisdiction of one state becomes a part of the law of that state, as much so as if incorporated into the body of it by the legislature. If, therefore, different interpretations are given in different states to a similar local law, that law, in effect, becomes by the interpretations, so far as it is a rule of our action, a different law in one state from what it is in the other."

In Forsyth v. Hammond, 166 U. S. 506, 518, 17 Sup. Ct. 665, 41 L. Ed. 1095, the court said:

"The construction by the courts of a state of its constitution and statutes is, as a general rule, binding on the federal courts. We may think that the supreme court of a state has misconstrued its constitution or its statutes, but we are not at liberty to therefore set aside its judgments. That court is the final arbiter as to such questions."

See, also, Brown v. New Jersey, 175 U. S. 172, 174, 20 Sup. Ct. 77, Adv. S. U. S. 77, 44 L. Ed. ——.

The law is well settled that each state has the power to exclude any foreign corporation from entering into its limits for the transaction of business except upon such terms and conditions as it may see fit to impose. As was said in Hooper v. California, 155 U. S. 648, 656, 15 Sup. Ct. 210, 39 L. Ed. 301:

"The power to exclude embraces the power to regulate, to enact, and enforce all legislation in regard to things done within the territory of the state which may be directly or incidentally requisite in order to render the enforcement of the conceded power efficacious to the fullest extent, subject always, of course, to the paramount authority of the constitution of the United States."

The constitution of California (article 12, § 15) declares that:

"No corporation organized outside the limits of this state shall be allowed to transact business within this state on more favorable conditions than are prescribed by law to similar corporations organized under the laws of this state."

This constitutional provision declares the public policy of the state; and, the supreme court having applied the provisions of section 1 of the statute under consideration to foreign corporations, and the words "any mining corporation" in said section being broad enough to include foreign as well as domestic corporations, we are not at liberty to say that such was not the intention of the legislature because the other provisions of the act are made applicable solely to domestic corporations. This brings the construction of the statute in harmony with the provisions of the constitution. Supervisors v. Brogden, 112 U. S. 261, 269, 5 Sup. Ct. 125, 28 L. Ed. 704. The second and third sections of the act provide that the stock in each mining corporation shall stand in the books of the company in the names of the real owners, or in the names of the trustees of the real owners, and provision is made as to how the stock of the corporation shall be voted. By these provisions the legislature sought only to regulate and control the internal affairs of the domestic corporations, as it had the right to do. Under the provisions of section 1 the legislature did not attempt to regulate the internal affairs of a foreign corporation. It had no power to do so. Miles v. Woodward, 115 Cal. 308, 311, 46 Pac. 1076. It sought to

regulate and control the business affairs of all corporations, both foreign and domestic, with reference to the manner in which their property situate within the state may be disposed of by deed or mortgage. This it had the power to do. The decisions of the supreme court of California have disposed of all the questions presented herein adversely to the views contended for by appellant. Our duty ends, as it began, by determining the extent and effect of these decisions. The decree of the circuit court is affirmed, with costs.