FLANIGAN v. SIERRA COUNTY.

(Circuit Court of Appeals, Ninth Circuit. March 4, 1903.)

No. 832.

1. FEDERAL COURTS—FOLLOWING STATE DECISIONS—VALIDITY OF STATUTES.

The decisions of the Supreme Court of California sustaining the constitutionality of county ordinances imposing license taxes for revenue, enacted pursuant to Act April 1, 1897 (St. Cal. 1897, p. 465, c. 277), are binding on the federal courts, and will be followed where similar ordinances enacted under the same statute are involved.

2. LICENSES—ACTION TO RECOVER FEES—EFFECT OF REPEAL OF STATUTE.

Act April 1, 1897 (St. Cal. 1897, p. 465, c. 277), authorized county boards of supervisors to pass ordinances "to license, for purposes of regulation and revenue all and every kind of business not prohibited by law and transacted and carried on in such county * * * to fix the rates of license tax upon the same and to provide for the collection of the same, by suit or otherwise." In 1900 a county adopted an ordinance which, inter alia, required a license to keep sheep in the county, and the payment of an annual license fee of 10 cents per head therefor. Shortly afterward, an action was brought to collect the license fee due under said ordinance from a sheepowner. March 23, 1901, and pending such action, an act (St. & Amend. to Codes 1901, p. 635, c. 209, § 3366) was passed, which by implication repealed the act of 1897 in so far as it

¶ 1. See Courts, vol. 13, Cent. Dig. § 957.

authorized county boards to collect a license tax for revenue. *Held*, that such act was not retrospective in operation, and did not abate the pending action for collection of the tax, the right to which had previously become vested in the county.

In Error to the Circuit Court of the United States for the Northern District of California.

A. E. Cheney and Campbell, Metson & Campbell, for plaintiff in error.

Frank R. Wehe, Dist. Atty. Sierra County, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge. This action was brought by the county of Sierra, in the state of California, to recover of and from the plaintiff in error herein a license tax of $2,500, it being alleged that said plaintiff was engaged in that county in the business of sheep raising without having first paid the license tax required by Ordinance No. 54, passed by the board of supervisors of Sierra county, May 31, 1900. This ordinance consists of 10 sections, which are set forth at length in the complaint. The first section reads as follows:

"Each and every person, copartnership, firm or corporation engaged in the business of raising, grazing, herding or pasturing sheep in the county of Sierra, state of California, must annually procure a license therefor from the license collector, and must pay therefor the sum of ten (10) cents for each sheep or lamb owned by, in the possession of, or under the control of such person, copartnership, firm or corporation, and used in such business in said county."

This ordinance went into effect June 15, 1900, and 10 days thereafter this action was brought. At the time this ordinance was enacted, the board of supervisors of each county of California was authorized, subject to the restrictions and limitations imposed by the Constitution and general laws, to license, for the purposes of regulation and revenue, all and every kind of business carried on in the county. St. Cal. 1897, p. 465, c. 277. On March 23, 1901, a new section was added to the Political Code of the state of California, to be known as section 3366, which repealed the authority of the board of supervisors to license for revenue. St. & Amend. to Codes Cal. 1901, p. 635, c. 209.

The averments in the complaint are sufficient to entitle the county to recover, provided the ordinance referred to is constitutional, in all respects valid, and of full force and effect so far as this case is concerned.

The defendant in the court below (plaintiff in error) interposed a demurrer to the complaint, on the general ground "that said complaint does not state facts sufficient to constitute a cause of action." This demurrer was overruled, "with leave to defendant to answer within twenty days." No answer being filed, the court directed judgment to be entered in favor of the plaintiff as prayed for in the complaint. From this judgment, a writ of error is brought to this court to have the alleged errors therein corrected. There are five assignments of error, which counsel for plaintiff in error have conveniently grouped under three propositions, viz.:

"(1) The ordinance in question is an unjust, discriminating, oppressive, and unconstitutional exercise of the power to license for the purposes of revenue.

"(2) By the repeal of the statute authorizing boards of supervisors 'to license for purpose of regulation and revenue,' and restricting their powers to license 'in the exercise of their police powers, and for the purposes of regulation as herein provided, and not otherwise,' without any saving clause in favor of pending suits or unpaid license taxes, the Legislature of the state destroyed the cause of action which it had authorized the board of supervisors to create, denied any remedy for its enforcement, and abated this action.

"(3) The ordinance is a revenue, not a regulation, measure. As an ordinance for purpose of regulation, it is illegal and void, because it does not regulate, and the fee charged is so unreasonable that the courts will, as a matter of law, declare that its real purpose is revenue, and not regulation, and therefore void as a pretended exercise of the police power."

In the consideration of the various questions raised in this case, it must be remembered that, at the time of the passage of the ordinance herein involved, it was expressly authorized by the "Act to establish a uniform system of county and township governments," approved April 1, 1897. St. 1897, p. 465, c. 277, § 25, subd. 25.

The validity of similar ordinances, where several constitutional and other objections were raised, has been frequently sustained by the Supreme Court of California. In re Guerrero, 69 Cal. 88, 91, 10 Pac. 261; Ex parte Mirande, 73 Cal. 365, 372, 14 Pac. 888; County of El Dorado v. Meiss, 100 Cal. 268, 34 Pac. 716; County of Inyo v. Erro, 119 Cal. 119, 51 Pac. 32; County of Los Angeles v. Eikenberry, 131 Cal. 461, 465, 466, 63 Pac. 766. These decisions are binding upon this court, and will be followed, regardless of the decisions upon similar questions in other states. Williams v. Gaylord, 42 C. C. A. 401, 102 Fed. 372, 374, and authorities there cited; Id., 186 U. S. 157, 167, 22 Sup. Ct. 798, 46 L. Ed. 1102.

It is, however, claimed that the case in hand presents other objections that were not considered or decided in the decisions above referred to. The statute of 1897, among other things, authorized the board of supervisors to pass ordinances "to license, for purposes of regulation and revenue, all and every kind of business not prohibited by law, and transacted and carried on in such county * * * to fix the rates of license tax upon the same, and to provide for the collection of the same, by suit or otherwise." In 1901 the Legislature passed "An act to add a new section to the Political Code of the state of California, to be known as section 3366, relating to the powers of boards of supervisors, city councils, and town trustees, in their respective counties, cities and towns, and to impose a license tax," approved March 23, 1901. St. & Amend. to Codes 1901, p. 635, c. 209. Section 3366 reads as follows:

"Boards of supervisors of the counties of the state, and the legislative bodies of the incorporated cities and towns therein, shall, in the exercise of their police powers, and for the purpose of regulation, as herein provided, and not otherwise, have power to license all and every kind of business not prohibited by law, and transacted and carried on within the limits of their respective jurisdictions * * * to fix the rates of license tax upon the same, and to provide for the collection of the same by suit or otherwise."

The Supreme Court of California has held that section 3366 repeals, by implication, the prior act of 1897, in so far as the same relates to

the power to collect a license tax for revenue, thus restricting the licensing power of boards of supervisors, under the act of 1897, to matters of regulation alone. Ex parte Pfirrman, 134 Cal. 143, 147, 148; City of Sonora v. Curtin (Cal.) 70 Pac. 674; Town of Santa Monica v. Guidinger (Cal.) 70 Pac. 732.

What effect does this repealing act have upon the present action, which was brought under the provisions of the law of 1897, before it was repealed? Counsel for plaintiff in error contend that, inasmuch as the law under which the ordinance for revenue purposes was passed has been repealed, the ordinance is repealed as to all such purposes, and must be regarded as if it never existed, except for the purposes of those actions which were commenced, prosecuted, and concluded while it was an existing law, and rely upon the rule, announced in many authorities, that, where the right and remedy is given by statute to bring a civil action for the collection of a license tax, the repeal of the statute destroys the remedy, unless the repealing statute contains a saving clause. Spears v. County of Modoc, 101 Cal. 303, 35 Pac. 869; Anderson v. Byrnes, 122 Cal. 273, 54 Pac. 821; State Hospital v. Flaherty, 134 Cal. 315, 66 Pac. 322; Ball v. Tolman, 135 Cal. 375, 67 Pac. 339, 87 Am. St. Rep. 110; City of Sonora v. Curtin (Cal.) 70 Pac. 674; Sutherland St. Const. §§ 162, 163, 166, and authorities there cited; Endlich on Int. of St. §§ 478, 480. This principle has been applied more frequently to penal statutes, and it may be regarded as an established rule that the repeal of a penal statute, without any saving clause, has the effect to deprive the court in which any prosecution under the statute is pending of all power to proceed further in the matter, and in such cases the proceeding will be arrested at the very point where it is at the time of the repeal (Spears v. County of Modoc, supra), because "the repeal of the law imposing the penalty is of itself a remission" (Maryland v. Railroad Co., 3 How. 534, 552, 11 L. Ed. 714, and authorities there cited).

The ordinance under discussion was adopted May 31, 1900. It went into effect 15 days thereafter. This action was commenced June 25, 1900. The amendment to the Code, section 3366, was approved March 23, 1901. The judgment in this case was entered March 7, 1902. Under these circumstances, does it necessarily follow that, because a saving clause was not inserted, the act of 1901 should be given a retrospective operation? Does this question not depend upon the circumstances and conditions of each particular act, its nature and character? In the present case the transaction between the parties, under the ordinance of 1900, was closed; nothing was left to be done except to collect the license due, which was authorized by the law then in force. Upon the facts of this particular case, can it be said that it was the intention of the Legislature, by the passage of the act of 1901, to annihilate the cause of action provided for in the act of 1897, and terminate all pending suits for its enforcement, or was it simply to take away the power of the board of supervisors in the future to license for revenue only?

In the City of Oakland v. Whipple, 44 Cal. 303, 305, which was an action for the recovery of a delinquent tax which was levied for the year 1869, and the action for its collection was commenced January

17, 1870, it was argued that the law under which said action was commenced was repealed after service of summons and before judgment; and it was there, as here, contended that the act passed in 1870 (St. 1869–70, p. 722, c. 493) repealed all prior acts so far as they conflicted with that act, and that the plaintiff was left without any cause of action, and was not thereafter entitled to maintain an action for the collection of a tax theretofore levied. The court said:

"To hold that the act [of 1870] was intended to have a retrospective operation, so as to affect taxes which had already become due, would be to hold that the Legislature intended to remit all those taxes. A result so manifestly incompatible with the plainest provisions of the Constitution would not be inferred, but must be made apparent by clear and unequivocal language. That construction is not necessary in order to give full effect to the act, and, in our opinion, it was not intended that the act should have a retrospective operation; but the intent was that the taxes then due should be collected according to the law then in force."

In the Town of Belvidere v. Railroad Co., 34 N. J. Law, 193, 195, where an act authorizing the levying of a certain tax on the capital stock of the defendant was repealed after an assessment of the tax, but before its collection, it was held that the repeal did not prevent the collection of such tax, its collection being regulated by the general tax law, which had not been repealed. In the course of the opinion, the court said:

"The general legal rule, as found in Dwar. on Stat. 676, is referred to, viz., 'That when an act of Parliament is repealed, it must be considered (except as to transactions passed and closed) as if it had never existed.' But even if we accept this definition as strictly correct in its application to every case, still it is not perceived how, by force of it, the present tax is to be avoided. The case seems to fall within the exception contained in the rule as just quoted. The assessment of this tax closed and ended the transaction, so far as the act of 1862 (P. L. 1862, p. 344) was concerned. That act authorized the assessment, and appointed the mode of making it, but it had nothing to do with its collection, which was and is altogether regulated by other acts. When, therefore, this assessment was made, the force of the act of 1862 was, with respect to it, wholly spent and exhausted. The thing authorized to be done was completely done, and the consequence is' that, even on the most stringent application of the rule as claimed, a repeal of the statute cannot invalidate a proceeding that was fully perfected while such statute continued in force. * * * As a question of intention, it is certainly very improbable that the Legislature, in 1866, by the repeal of the act of 1862, intended to annul assessments which had been made under the latter act, and which remained uncollected by reason of litigation, or from any other cause. Such a supposition would be most unreasonable. * * * As the tax now in controversy was assessed during the existence of the act of 1862, and as the proceedings for its collection do not depend on that act, my conclusion is that the subsequent repeal of that statute cannot, on general principles, invalidate such assessment."

See, also, Dodge v. National Bank (C. C. A.) 109 Fed. 726, 731, and authorities there cited.

The defendant in error contends that the license fee or tax, after the preliminary steps taken for its collection, became a debt (and it is so expressly declared to be in the ordinance in question), and that it had a vested right to collect the same. It has frequently been held that a direct tax, duly assessed and levied upon real or personal property, is not a debt within the broad meaning of that term. But a license fee or tax does not stand upon the same plane. It is true that

a vested right is usually based upon contracts, but it may also be based upon transactions in the nature of a contract.

In Sutherland on Stat. Const. § 164, the author said:

"When a right has arisen on a contract, or a transaction in the nature of a contract authorized by a statute, and has been so far perfected that nothing remains to be done by the party asserting such right, the repeal of the statute will not affect it or an action for its enforcement. It has become a vested right, which stands independently of the statute."

The same rule is laid down by the Supreme Court of the United States in Steamship Co. v. Joliffe, 2 Wall. 450, 455, 17 L. Ed. 805, where a pilot, licensed under a statute, had tendered his services to pilot a vessel out of port, and such services were refused. The court held that his claim to the half pilotage fees allowed by the statute in such cases became perfect, and that the subsequent repeal of the statute did not affect the judgment rendered in an action brought to recover his claim. In the course of the opinion the court said:

"The transaction * * * between the pilot and the master or owners cannot be strictly termed a contract, but it is a transaction to which the law attaches similar consequences; it is a quasi contract. The absence of assent on the part of the master or owner of the vessel did not change the case. In that large class of transactions designated in the law as 'implied contracts,' the assent or convention which is an essential ingredient of an actual contract is often wanting. * * * In such case the party makes no promise on the subject, but the law, 'consulting the interests of morality,' implies one; and the liability thus arising is said to be a liability upon an implied contract."

In the present case the plaintiff in error did not directly promise to pay the license tax demanded by the defendant in error, but he herded and grazed his sheep in Sierra county when the law for the imposition and collection of the license tax was in full force and effect. He reaped the full benefit of the law, and then refused to comply with it. Do not these facts virtually bring this case within the rule announced in the Joliffe Case?

Similar principles are announced in United States v. Williams, 8 Mont. 85, 90, 19 Pac. 288, where the defendant sought to avail himself of the repeal of the regulations by the Secretary of the Interior forbidding the cutting of timber on the public land. In the course of the opinion the court said:

"The question then arises, what were the rights of the United States in relation to this timber? * * * The timber had been unlawfully cut and converted, and the right of the United States to receive compensation for its property completely vested. What effect, then, did the subsequent revocation of these rules and regulations touching the cutting of such timber have upon this right? We take it that the modification of the rule is analogous to the repeal of the statute, and that its effect must be determined by the rules of law governing the repeal of the statute under which the alleged right had arisen, and which was being prosecuted in the courts, but still had not been reduced to a judgment."

After referring to the general rule, the court said:

"But there are certain exceptions to this general rule. Where trouble and expense may have been incurred, and suits may have been instituted, the effect of a retrospective construction of repealing statutes is entirely to derange the plans and defeat the arrangements of parties who have proceeded on the faith of antecedent legislation; and an effort has been made to ar-

rest these results, and certain exceptions have been made to this retroactive legislation. Where, then, a right in the nature of a contract has vested under the original statute, then the repeal does not disturb it."

. The court then states and approves the rule in the case of Steamship Co. v. Joliffe, supra, and adds:

"While the action in the present case cannot be said to be one of contract, but an action of tort for the wrongful cutting and conversion of the timber of the plaintiff, it is hard to imagine a distinction between the right to recover for trees cut and converted wrongfully, and money due for their delivery under contract. If the right is vested in the one case, it seems to us it is equally as clearly vested in the other. Indeed, the timber when cut may be deemed personalty, and the plaintiff might waive the tort, and sue for it in assumpsit as so many cords of wood sold and delivered. It seems to us, then, that the plaintiff's right in this case comes within the exceptions to the general rule already stated, by which the right of action is defeated upon the repeal of the law under which it was brought."

The views already expressed are conclusive of the case, and render it unnecessary to consider other questions elaborately argued by counsel. The judgment of the Circuit Court is affirmed, with costs.