NELSON et al. v. BANK OF FERGUS COUNTY.

(Circuit Court of Appeals, Eighth Circuit. November 25, 1907.)

No. 2,587.

1. CORPORATIONS—FOREIGN CORPORATIONS—LIABILITY OF DIRECTORS UNDER MONTANA STATUTE.

Civ. Code Mont. § 451, as amended by Act Feb. 26, 1903 (Laws 1903, p. 45, c. 32) providing that "every corporation having a capital stock" shall annually, and within 20 days from and after the 31st day of December, make a report, which shall state the amount of its authorized capital, and what portion has been paid, and the amount of its debts, and that, if any such corporation shall fail to make such report, its directors

shall be jointly and severally liable for all debts of·the'corporation then existing or which may be thereafter contracted until such report shall be made and filed, being general in its language and having been changed into its present form after the adoption of the state Constitution, article 15, § 11, of which provides that no foreign corporation "shall have or be allowed to exercise or enjoy within this state any greater rights or privileges" than those possessed or enjoyed by domestic corporations, applies alike to domestic and foreign corporations doing business within the state, and the failure of such a foreign corporation to make the required report renders its directors liable for the existing debts of the corporation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, §§ 2529, 2530.]

**2.** CONSTITUTIONAL LAW—RETROSPECTIVE LAWS—AMENDMENT OF STATUTE.

The amendment of such section of the statute by Act Feb. 26, 1903 (Laws 1903, p. 45, c. 32), which merely changed the time when the report is required to be filed, does not render it a retrospective law, within the prohibition of Const. Mont. art. 15, § 13, as applied to debts of a corporation contracted before its enactment.

**3.** APPEAL AND ERROR—REVIEW—EXCESSIVE JUDGMENT.

That a judgment is excessive cannot be assigned for error in the Circuit Court of Appeals.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 3944–3947.]

In Error to the Circuit Court of the United States for the District of Minnesota.

Newel H. Clapp (George M. Nelson and Charles W. Farnham, on the brief), for plaintiffs in error.

Edward P. Sanborn and S. H. McIntire, for defendant in error.

Before VAN DEVANTER and ADAMS, Circuit Judges, and RINER, District Judge.

ADAMS, Circuit Judge. Since June, 1902, the New Year Gold Mines Company, a corporation of West Virginia, has had its principal office and has conducted its operations consisting of mining in Fergus county, Mont. On December 31, 1902, it owed the defendant in error, the Bank of Fergus County, and another corporation which assigned its claim to the bank, some $12,000. The Mines Company failed to file, within 20 days after December 31, 1903, in the office of the clerk of Fergus county, a report, signed by its president and majority of its directors, stating the amount of its capital 'stock, the proportion thereof paid in, and the amount of existing indebtedness, as required by section 451 of the Civil Code of Montana, as amended by the act of February 26, 1903 (Laws 1903, p. 45, c. 32); and this suit was brought against the directors to enforce liability for the debts of the corporation created by such failure. The Circuit Court held them liable and this writ of error challenges that judgment.

The section in question reads in part as follows:

"Every corporation having a capital stock, shall annually and within twenty days from and after the thirty-first day of December, make a report which shall state" etc. "If any such corporation shall fail so to do, all the directors of the corporation shall be jointly and severally liable for all debts of the corporation then existing or which may be thereafter contracted until such report shall be made and filed. * * *"

Defendants' counsel contend that the statute does not mean what its introductory words, "Every corporation having a capital stock shall," etc., apparently indicate, but that it relates to domestic corporations only, and not at all to foreign corporations, like the Mines Company. In maintaining this contention the history of the statute is appealed to. Section 15, tit. 1, p. 28, of the Territorial Laws of Montana for the year 1867, under the title "An act to provide for the formation of corporations for certain purposes" is as follows:

"Every such company shall annually within twenty days from the 1st of September make report which * * * shall state, * * * and if any of said companies shall fail to do so all the trustees of the company shall be jointly and severally liable for all debts of the company then existing and for all that shall be contracted before such report shall be made."

This section, which is the origin of the one invoked by the plaintiff in this case, clearly relates to domestic corporations, and subjects directors of such corporations only to liability for its debts. This section 15 was carried forward into the Codified Statutes of Montana (1871–72) as section 15, c. 18, p. 409, which relates mainly to domestic corporations. Section 46 (page 419) however, of that chapter, relates to foreign corporations and requires that they, as a condition of doing business in Montana, shall file for record with the Secretary of the Territory and in the office of the recorder of the county in which they propose to do business a copy of the charter or certificate of incorporation duly verified as therein prescribed. Chapter 15, div. 5, of the Revised Statutes of 1879, entitled "Corporations for Industrial or Productive Purposes," contains sections 258 and 289, which are identical, respectively, with section 15 of the Laws of 1867 and section 46 of chapter 18 of the Codified Statutes of 1871–72.

Up to this time it will be seen that domestic and foreign corporations had been treated separately and quite differently in the statutes. The first had been required to file verified statements showing the amount of their authorized capital and what portion had been paid in and the amount of their debts. The second had been required to file only certified copies of their charters or certificates of incorporation. By an act approved July 22, 1879 (Laws 1879, [Ex. Sess.] p. 8), the Legislature of Montana for the first time enacted that foreign corporations should be required to file, among others, the statements before that time required of domestic corporations, with some additional information touching assets and liabilities. The penalty for failure to do so (instead of subjecting the directors to liability for the debts of the corporation) was to invalidate the contracts of the foreign corporations made during the continuance of such failure and subject the corporations themselves to fines. This last act was carried forward into the Compiled Statutes of 1888 as chapter 24, div. 5, which has for its title "Foreign Corporations." It deals exclusively with such corporations, making no change in the penalty theretofore prescribed for failure to make the required statements. Chapter 25 of the compilation of 1888 has for its title "Corporations for Industrial or Productive Purposes," and first deals with the method of organizing corporations in the state of Montana—that is, with the organization of domestic corporations; and then in section 460 is found a reproduction of section

15 of chapter 18 of the Codified Statutes of 1871–72 with its peculiar penalty for noncompliance with its provisions. So that in the compilation of 1888 domestic and foreign corporations are the subjects of different sections, and both are required to file certain statements (one a statement of capital stock authorized and paid in, and its debts; the other, the statement just mentioned, together with additional showing of the amount of assets and some other details not required of domestic corporations), and they are subject to different penalties for failure to file the statements.

It may be conceded that section 460 of chapter 25, which contains the only provision subjecting corporate directors to liability for corporate debts for failure to make required statements, has relation only to domestic corporations. Its introductory words, "Every such company," are clearly referable to the kind of corporation provided for in antecedent sections, and they were domestic corporations.

In 1889 the state of Montana adopted its Constitution and ordained (article 15, § 11):

"That no company or corporation formed under the laws of any other country, state or territory shall have or be allowed to exercise or enjoy within this state any greater rights or privileges than those possessed or enjoyed by corporations of the same or similar character created under the laws of the state."

In February, 1895, code commissioners appointed by a previous Legislature submitted to the Legislature then in session their report recommending the adoption of four codes, the Political Code, the Civil Code, the Code of Civil Procedure, and the Penal Code. These were adopted in the form known as "Montana Statutes and Codes" (1895). Section 299 of the Civil Code so adopted is in the following language:

"Every corporation shall semiannually within twenty days from the first days of January and July make report, which shall * * * state the amount of the capital and of the proportion actually paid in, and the amount of the existing debts, * * * and if said corporation shall fail to do so, all the directors of the corporation shall be jointly and severally liable for all debts of the corporation then existing, and for all that shall be contracted before such report shall be made."

The foregoing was reported and adopted as part of the Civil Code. Afterwards, by an act approved March 14, 1895, the Legislature amended section 299 of the Civil Code so as to make the same read as follows:

"Every corporation having a capital stock shall annually * * * [instead of "Every corporation shall semiannually," as before] make a report," etc.

This section as amended finally went into the Civil Code of 1895 as section 451, under the general title, "General Provisions Applicable to all Corporations," but under a subtitle, "Corporations Defined and How Organized."

Section 1030 of the Civil Code, under the title of "Foreign Corporations," is practically a reproduction of the original act of July 22, 1879, and re-enacts its conditions requiring statements, etc., upon which foreign corporations may do business in the state, but does not subject

their directors to liability for their debts for failure to make the statements.

The act of Februray 26, 1903 (Laws Mont. 1903, p. 45, c. 32), which is the last expression of the Legislature on the subject, amends section 451 of the Civil Code so as to change the time within which reports should be filed from "within twenty days from and after the first day of September" annually to "within twenty days from and after the thirty-first day of December" annually.

It is in view of this legislative history that defendants' counsel contend that the liability of corporate directors for the debts of their corporations for failure to file required statements is limited to domestic corporations only. Is this sound? We think not, and for the following reasons:

1. The language of the statute as it now stands is broad enough, when literally read, to subject the defendants who were directors of the Mines Company to liability for plaintiff's debt. It reads, "Every corporation having a capital stock shall annually within twenty days from and after the thirty-first day of December make a report," etc., and in case of failure to do so it subjects its directors whose duty it was to sign the report to liability for all its debts. The Mines Company was a corporation having a capital stock and in other respects comes within the contemplation of the statute. Presumptively, therefore, the defendants are liable for the debt sued for in this action. The language of the law, being clear and unambiguous, leaves little, if any, scope for judicial construction. United States v. Wiltberger, 5 Wheat. 76, 96, 5 L. Ed. 37; Brun v. Mann, 80 C. C. A. 513, 151 Fed. 145, 157.

2. In view of the constitutional prohibition (first effective in 1889) against allowing a foreign corporation to exercise or enjoy any greater rights or privileges than those possessed by domestic corporations, it was a reasonable and appropriate thing for the Legislature to change the old law, which subjected directors of domestic corporations only to liability for their debts, so as to subject directors of both domestic and foreign corporations alike to that liability, and thereby to harmonize the statute with the Constitution. Grenada County Supervisors v. Brogden, 112 U. S. 261, 269, 5 Sup. Ct. 125, 28 L. Ed. 704; Williams v. Gaylord, 42 C. C. A. 401, 102 Fed. 372, 375. That prohibition certainly indicated to the Legislature a general organic policy which reasonably actuated it to subject directors of domestic and foreign corporations alike to liability for the debts of their respective corporations.

It is argued against this that the prohibition is against foreign corporations only, and cannot be invoked to affect individual director's responsibility for the indirect consequences of violating law by their corporations. This may, as broadly stated, be true. Nevertheless it is a discrimination in favor of one class of corporations to enable it to secure and have directors who shall not be subject to personal liability, while another class is not permitted to enjoy that advantage. The former could doubtless more readily secure directors and officers than the latter. The case of Crisswell v. Montana Cent. Ry. Co., 18 Mont. 167, 44 Pac. 525, 33 L. R. A. 554, invoked by defendants' counsel deals with the question whether a given statute is in conflict with

the provisions of article 15, § 11, of the Constitution, and is of little value on the present inquiry concerning the legislative intent in enacting the Code of 1895, in the light of the then existing constitutional provision.

3. There are many evidences of an intelligent and determined purpose on the part of the Legislature, in 1895, to change the law on the subject in question from what it had been before. Up to that time all the legislation imposing personal liability on directors had been limited to directors of domestic corporations, and all the statutes on the subject, from and including the initial act of 1867, had begun with the words, "Every such company shall * * * make report," etc., and those words clearly referred to antecedent sections of the law concerning domestic corporations only. In 1895 a noticeable change in phraseology took place. The codifying commissioners first made their report, recommending, among other things, the Legislature to omit the word "such," and to require two annual reports by corporations, instead of one as before. Their report was adopted as a whole, and section 299, which related to the subject in question, was according to its terms broad enough to embrace all corporations, instead of domestic corporations as before. But this is not all. The attention of the Legislature was again called to the subject, and at the same session (1895) it amended section 299 of the Civil Code by limiting its operation to corporations "having a capital stock" and limiting the reports to be filed to one annual report, instead of two semiannual reports, as before. The act as so amended went into the Statutes and Codes of 1895 as section 451 of the Civil Code. Later, on February 26, 1903, the Legislature again took up section 451 and by an amendment of that date changed the time for making corporate reports from "within twenty days after the first day of September" to "within twenty days after the thirty-first day of December" of each year. The Legislature apparently discovered no doubtful or ambiguous phraseology which it desired to correct.

The result of these modifications of the old law was to make the provision in question embrace, according to its terms, all corporations which had capital stock, as distinguished, probably, from religious, social, and benevolent corporations, which had no capital stock, and to require them to make one annual report, instead of two, as recommended by the commissioners. It thus appears that the legislative mind had been sharply called to the subject in question on three different occasions, and that it finally left section 451 so as to clearly and unequivocally embrace foreign corporations as well as domestic. In such circumstances it would be unreasonable to conclude that the language finally adopted was the result of inadvertence and did not accurately express the legislative purpose. The Legislature must be presumed to have had some purpose in deliberately changing the phraseology of the old law, and persistently adhering to the change, when subsequent amendments called critical attention to it.

But it is said that section 451 of the Civil Code is found under a subhead "Corporations Defined and How Organized," denoting domestic corporations, and not under the title "Foreign Corporations," un-

der which is found many, and presumptively, as it is claimed, all, the provisions concerning them, and that all its associated sections concern domestic corporations only. An argument is deduced from this fact in favor of the defendants' contention. Whatever aid the special location of this section in the statutes might otherwise give us, we are precluded by the Legislature itself from drawing any presumptions therefrom. Section 5182, subd. 3, of the Political Code, which forms a part of the "Statutes and Codes" in question provides as follows:

"The arrangement and classification of the several parts of said Codes have been made for the purpose of convenience and orderly arrangement and therefore no implication or presumption of a legislative construction is to be drawn therefrom."

This section amounts to a legislative declaration against indulging in the presumption invoked by defendants' counsel.

It is also argued, in view of other provisions of the statute in question, that the Legislature intended to restrict the words "Every corporation having a capital stock" to domestic corporations having a capital stock. To this argument we have given careful consideration; but, for reasons already pointed out, we do not think it correctly interprets the legislative will.

The contention that the judgment below was excessive cannot be considered by us. No error of this kind was assigned, and, if it had been, under firmly settled authority we could not consider it. Illinois Cent. R. Co. v. Davies, 76 C. C. A. 613, 146 Fed. 247.

Contention appears to be made in the brief of defendants' counsel that the amendatory act of 1903, under the provisions of section 13 of article 15 of the Constitution of Montana, which prohibits retrospective laws, is inapplicable to the present case, because the debts sued for were contracted by the Mines Company before it was enacted. This contention, as we remember it, was abandoned at the oral argument. If not, it is untenable. Diamond Glue Co. v. United States Glue Co., 187 U. S. 611, 614, 23 Sup. Ct. 206, 47 L. Ed. 328. The amendment in question is a constitutional and appropriate exercise of the sovereign power of the state over corporations, whether domestic or foreign, in the nature of a regulation to secure safety to its citizens and conformity to its internal policy. Hooper v. California, 155 U. S. 648, 15 Sup. Ct. 207, 39 L. Ed. 297; Orient Ins. Co. v. Daggs, 172 U. S. 557, 19 Sup. Ct. 281, 43 L. Ed. 552; New York Life Ins. Co. v. Cravens, 178 U. S. 389, 20 Sup. Ct. 962, 44 L. Ed. 1116; Pinney v. Nelson, 183 U. S. 144, 22 Sup. Ct. 52, 46 L. Ed. 125. Moreover, the Mines Company was subjected to no new duty or burden by the amendment of 1903. The obligation to make reports had been upon all foreign corporations for many years before the debts in question were created. The only change made by the amendment was in respect of the time when reports should be made. Other than in that incidental feature the old law continued in force, and governed the conduct of all foreign corporations as well after the amendment as before. So far as the new law was a re-enactment of the old one, it was an affirmation and continuation of the old law and not new legislation.

Great Northern Ry. Co. v. United States, 84 C. C. A. 93, 155 Fed. 945.

The judgment of the Circuit Court must be affirmed, and it is so ordered.