**Durrell Edward TYSON, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

· No. 6406.

United States Court of Appeals
Tenth Circuit.

Nov. 16, 1960.

Jack E. Gray, Oklahoma City, Okl. (Blumenthal, Gray & Cohen, Oklahoma City, Okl., were with him on the brief), for appellant.

Jack R. Parr, Oklahoma City, Okl. (Paul W. Cress, U. S. Atty., Oklahoma City, Okl., was with him on the brief), for appellee.

Before MURRAH, Chief Judge, and HUXMAN and PICKETT, Circuit Judges.

HUXMAN, Circuit Judge.

Appellant, Durrell Edward Tyson, together with Phillip Dale Russell, was charged by information with juvenile delinquency by reason of violation of 18 U.S.C.A. § 331. The information charged him with having violated the Statute by possessing 379 Mexican Cinco

Centavo (5 cents) coins, by law made current, which coins had been fraudulently altered, defaced, mutilated, impaired, diminished, falsified, scaled and lightened. He pled guilty to the charge and was sentenced to a Federal Reformatory. Thereafter, he filed a motion in the sentencing court, pursuant to 28 U.S.C.A. § 2255, to set aside the judgment and sentence on the ground that the judgment and sentence were void because the information on its face failed to state a federal offense. This is an appeal from the judgment of the court denying relief under his motion.

Appellant's plea of guilty admits that he had in his possession 379 Mexican Cinco Centavo coins which had been fraudulently altered, defaced, mutilated, etc. Section 331 of the Act of 1951, under which the information was drawn, provides that:

"Whoever fraudulently alters, defaces, mutilates, impairs, diminishes, falsifies, scales, or lightens any of the coins coined at the mints of the United States, or any foreign coins which are by law made current or are in actual use or circulation as money within the United States; or

"Whoever fraudulently possesses, passes, utters, publishes, or attempts to pass, utter, publish, or sell, or brings into the United States, any such coin, knowing the same to be altered, defaced, mutilated, impaired, diminished, falsified, scaled, or lightened—

"Shall be fined not more than $2,000 or imprisoned not more than five years, or both."

▮ The Act of 1951 sets out two offenses. First, prohibited acts with respect to coins minted at the United States Mint and foreign coins "by law made current," and, second, the same acts committed with respect to coins which "are in actual use or circulation as money within the United States." Since Tyson was charged only under the first offense, we limit our consideration to an interpretation of the phrase "by law made current." Appellant's contention is that the phrase means made current by the laws of the United States. It is conceded that Mexican Cinco Centavo coins are not made current by the laws of the United States. The court adopted the Government's construction of the phrase and held that it meant made current by the laws of Mexico.

Our research has failed to find a single case in which the precise question has been before the courts. Only two cases are cited by the parties in their brief,[1] neither of which is directly in point because they did not arise under the particular act, and because they did not involve the construction of this particular provision of the act. The ancestor of Section 331 would seem to be Chapter 49 of the Act of April 21, 1806, 2 Stat. 404, which reads as follows:

"And be it further enacted, That if any person shall fraudulently and for gain's sake, by any art, way, or means whatsoever, impair, diminish, falsify, scale, or lighten the gold or silver coins, which have been, or which shall hereafter be coined at the mint of the United States; or any foreign gold or silver coins, which are by law made current, or are in actual use and circulation as money within the United States, every person so offending shall be deemed guilty of a high misdemeanor, and shall be imprisoned not exceeding two years, and fined not exceeding two thousand dollars."

This act was passed in the early history of our country. It antedates the Congressional record and such records of the congressional proceedings as were kept at the time throw no light on the meaning Congress ascribed to this term. This portion of the Act remained on the statute books in substantially its original form, until the amendment of 1951.

1. United States v. Gardner, 10 Pet. 618, 9 L.Ed. 556; United States v. Gertz, 9 Cir., 249 F.2d 662.

Congress seems to have used the phrase "by law made current" or "by law made current in the United States" interchangeably in various acts relating to coinage or crimes affecting coinage or currency. The Act of 1873, 17 Stat. 424, entitled, "An Act revising and amending the Laws relative to the Mints, Assay Offices and Coinage of the United States," includes Section 3 of the Act of 1806 and contains the identical phrase found in that Act. It makes it an offense to "deface, mutilate," etc., foreign gold or silver coins "which are by law made current." The Act of March 3, 1897, 29 Stat. 625, which added an additional offense, embodied the same provision. The law underwent a minor change in 1909, (35 Stat. 1119) and took its pre-1951 form in 18 U.S.C.A., (1940 Ed.) Sec. 279. The Act of June 25, 1948, (62 Stat. 708) made it an offense to forge or counterfeit " * * * any foreign gold or silver coin *current in the United States."* [2] All these laws were passed in the field of coinage and currency, and had for their purpose the protection of coinage and the currency.

■ The Constitution of the United States makes it the duty of Congress to provide circulating media of exchange for the United States and to protect the currency so established.[3] Was not this what Congress was concerned with when it passed the Act of 1806? It was concerned with protecting the money which by law was made current or legal tender. This concept is fortified when we consider that eleven days before the passage of this Act, Congress declared the gold coins of Great Britain, Portugal, France and Spain to be current money.[4] Having by law made the gold and silver coins of these countries current in the United States, we think Congress intended by the Act of 1806 to protect these foreign coins which thus became legal tender in the United States. That Congress was concerned with protecting the circulating currency whether made legal tender or

accepted as currency in fact by circulation is evidenced by the second proviso of the original Act which made it an offense to lighten or mutilate any gold or silver coin of a foreign country which was in actual use and circulation as money.

To adopt the construction urged by the Government would mean by the Act of 1806, Congress intended to protect the gold and silver coins of every Nation on the face of the earth then existing or thereafter coming into existence, even though such coins were not in use or circulating as money in the United States, and when the lightening or scaling of such coins could have no impact upon the currency in use in the United States.

If, by the first proviso, Congress intended to make it an offense against the laws of the United States to lighten, etc., the coins which had been made current in a foreign country by its laws, why was it necessary to add the second proviso which made it an offense to lighten coins of a foreign country which are in actual use and circulation? If the fraudulent lightening of a foreign coin, whether in use as money or not, was an offense, the second proviso would be meaningless and add nothing to the Act. We conclude that by the term "by law made current" in the Act of 1806, Congress intended to protect the gold and silver coins of those countries which by law it had made current in this country.

■ A second contention is that even if the term "by law made current" originally carried the construction we have placed upon it, the amendment of that Act in 1951 was intended to extend its application to coins made current by the laws of the Country issuing the coin because otherwise it would be a dead letter and have no force and effect since by the Act of February 21, 1857, 11 Stat. 163, Congress provided that no foreign gold or silver coins shall be legal tender in payment of debts. It must be conceded that presently there are no

---

2. Emphasis supplied.

3. See Article I, § 8, Clauses 5 & 6, Constitution of the United States.

4. Chapter 22, April 10, 1806, 2 Stat. 374.

foreign coins made current by law of the United States. But if the occasion arose, Congress could again make foreign coins current.

■■ Assuming that we have correctly interpreted the meaning of the term "by law made current" in the Act of 1806, what would be the status of this phrase if the Act had not been amended in 1951? Would we then say we must now give this provision of the law a new interpretation and make it apply to coins made current in a foreign country; otherwise, it would become inoperative and have no further place in the law? A law and its application can only be changed by Congress either by the abolition of the old law and the passage of a new law or by an amendment of the old law clearly showing that Congress intended for the law to have a new meaning. We cannot wish a new interpretation into a law or give it a new application merely because the situation which caused its passage had ceased to exist.

■ A general rule of construction is that provisions of an original act or section re-enacted or substantially repeated in an amendment are construed as a continuation of the original law. Such provisions are generally held to have been the law since they were first enacted.[5]

There is nothing in the legislative history concerning the 1951 Amendment indicating that Congress was concerned with the meaning to be given to the phrase "by law made current." That phrase was re-enacted in the exact language of the 1806 Act. Nothing in the legislative history of the 1951 Amendment indicates that Congress intended that the phrase "by law made current" should be broadened or interpreted otherwise than as in the original act.

Report No. 465, House of Representatives, dealing with the amendment, states:

"The purpose of the bill is to make certain minor amendments to the laws relating to coins and counterfeiting, and to provide basic legislative authority for the United States Secret Service to perform certain functions . and activities. Section 1 of the bill amends Section 330 of Title 18, which prohibits the defacement, falsification or mutilation of gold and silver coins by extending its application to pennies and nickels, and to include the fraudulent alteration of coins. A Federal Court has held that changing the shape or size of a coin is not a mutilation under the Statute."

The only change made in the Act of 1806 by the 1951 Amendment, was to strike from the law the words "gold and silver" after the word "foreign," thus making that provision read "or any foreign coins," and adding the word "alter," making it an offense to alter such coins. This last amendment was stated to be necessary because of a ruling by a federal court "that changing the size or shape of a coin is not a mutilation under the statute." Thus, it clearly appears that in passing the Amendment of 1951, Congress gave no thought to the meaning of the phrase "by law made current" in the Act of 1806, nor did it have in mind or give thought to changing the meaning and application of this term of the original act, as carried forward in the 1951 Act.

Assuming that Congress has power to make it an offense against the laws of the United States to mutilate every coin of every foreign country in existence or hereafter coming into being, such coins being neither made current in this Country by our laws nor being in circulation as money, we find nothing in the Act of 1806 or the Amendment of 1951 which would warrant the conclusion that Congress intended to do so.

Reversed and remanded with directions to grant the relief prayed for in the motion.

5. Great Northern Ry. Co. v. United States, 8 Cir., 155 F. 945; Nelson v. Bank of Fergus Co., 8 Cir., 157 F. 161, 168.